96 P.3d 571

Brenda PARGMAN, a single woman, Plaintiff–Appellant,

v.

Betty A. VICKERS and John Doe Vickers, husband and wife, Defendants–Appellees,

Foundation Reserve Insurance Company, Real Party in Interest–Appellee.

No. 1 CA–CV 03–0561.

Court of Appeals of Arizona, Division 1, Department E.

Aug. 31, 2004.

Petersen Johnson, P.C., By Timothy R. Grimm, Phoenix, for Plaintiff–Appellant.

Andrew F. Marshall, P.C., By Andrew F. Marshall, Phoenix, for Real Party in Interest–Appellee.

## OPINION

NORRIS, J.

¶ 1 This appeal arises out of a personal injury case filed within the two-year statute of limitations by plaintiff-appellant Brenda Pargman against Betty Vickers. When Pargman sued Vickers, she did not know Vickers had died.

¶ 2 After expiration of the limitation period, Pargman filed an amended complaint naming Vickers' estate and sought to recover against the only assets of the estate, insurance proceeds available under a policy issued to Vickers by the real party in interest, Foundation Reserve Insurance Company. The trial court dismissed Pargman's amended complaint, finding it time barred. The

trial court held the amended complaint could not "relate back" to the date of the original complaint because, under Rule 15(c) of the Arizona Rules of Civil Procedure, the estate was not in existence and could not have known about the action and Pargman's mistake before expiration of the time specified in that rule for such notice and knowledge.

¶ 3 The issue presented in this appeal is whether, under these circumstances, an amended complaint naming a decedent's estate may relate back to the date of the original complaint that mistakenly named only the decedent as the defendant.

¶ 4 We hold that when, as here, a plaintiff mistakenly sues a decedent and not the decedent's estate and seeks to recover only against insurance proceeds, if the decedent's insurer had notice of the action and knowledge of the plaintiff's mistake within the period specified by Rule 15(c), an amended complaint will relate back to the date of the original complaint absent any prejudice to the insurer and the estate, and assuming the other requirements of Rule 15(c) are met. Consequently, we reverse the trial court's judgment dismissing Pargman's case.

## FACTS AND PROCEDURAL HISTORY

¶ 5 On March 18, 1997, Pargman and Vickers were involved in an automobile accident. At some point in 1997—the record does not reflect when—Foundation, Vickers' automobile liability insurer, received notice of the accident. Three months after the accident, Vickers died from unrelated causes.

¶ 6 Unaware that Vickers had died, Pargman filed a personal injury lawsuit against her on March 5, 1999, before the two-year statute of limitations for personal injury under Arizona Revised Statutes ("A.R.S.") section 12–542 (2003)[1] expired.[2] Pargman then had 120 days to serve Vickers with a summons and the complaint. Ariz. R. Civ. P. 4(i).

¶ 7 By letter dated March 25, 1999, Pargman's attorney notified Foundation's adjuster of the lawsuit. The adjuster requested a copy of the summons and complaint. Pargman's lawyer sent the adjuster a copy of the complaint on April 28, 1999 and also advised the adjuster that he had been unable to locate Vickers and requested her current address. In response, the adjuster advised Pargman's attorney that it had no knowledge of Vickers' "whereabouts."

¶ 8 Foundation then retained an attorney to look into the matter for it. On June 2, 1999, Foundation's attorney informed Pargman's lawyer that he had received a copy of Foundation's file, along with a copy of Pargman's complaint, stated that he too did not know Vickers' "whereabouts," and asked for an opportunity to file a responsive pleading before Pargman defaulted Vickers. On June 11, 1999, Foundation's adjuster informed Pargman's attorney that although it had not had any contact with Vickers, it had learned, but not confirmed, "that perhaps she is deceased." Three days later, Foundation's attorney wrote Pargman's lawyer and stated that "if and when appropriate service of process is affected on the estate of Betty A. Vickers ... we will respond accordingly."[3]

¶ 9 At that point, at her request, the trial court granted Pargman an extension to November 23, 1999 to effect service. In requesting the extension, Pargman advised the court she had been unable to serve Vickers who "may ... be deceased."

¶ 10 Pargman attempted to serve Vickers through publication. On November 1, 1999, she filed an Affidavit of Publication reflecting completion of the publication process. On January 14, 2000, at Pargman's request, the trial court continued the case on the inactive calendar to May 9, 2000. In obtaining this continuance, Pargman's lawyer informed the court that Vickers had been served by publication and that additional time was needed to either complete arbitration or obtain a default judgment.

---

1. We cite the current version of applicable statutes where no revisions material to the decision have occurred.

2. Under A.R.S. § 14–3802 (2003), the limitations period was suspended during the four months

following Vickers' death and so was extended by that period of time.

3. Subsequently, the attorney representing Foundation also appeared on behalf of Vickers' estate.

¶ 11 On January 21, 2000, the attorney retained by Foundation informed Pargman's lawyer that Vickers had died and, according to the "records department for probate proceedings," no probate had been opened for her. The lawyer gave Pargman's attorney a copy of Vickers' death certificate and asserted Vickers' death invalidated the service by publication.

¶ 12 On February 28, 2000, Pargman filed an application in the probate court for the informal appointment of a special administrator for Vickers' estate who could accept service of process. Over Foundation's objection, the probate court appointed a special administrator who accepted service on May 24, 2000. However, Foundation continued to pursue its objections to the appointment of the special administrator and, ultimately, on October 17, 2000, the probate court vacated the administrator's appointment. The probate court nullified all of the actions taken by the special administrator, thus, invalidating the special administrator's acceptance of service.

¶ 13 On November 6, 2000, Pargman filed several motions that collectively requested the court to maintain her personal injury case on the inactive calendar so she could take steps in the probate court to obtain appointment of a personal representative for Vickers' estate who could accept service.[4] Pargman also requested the court to allow her to amend her complaint to add Vickers' estate and/or the personal representative of Vickers' estate as a defendant and to extend time for completion of service. After oral argument, the trial court granted Pargman's motions, continued the case on the inactive calendar and allowed Pargman to amend her complaint to add Vickers' estate as a defendant. In its ruling, the court noted that Foundation "had received actual notice of plaintiff's claim shortly after the accident in 1997."

¶ 14 On November 22, 2000, Pargman filed a first amended complaint, naming Vickers' estate as a defendant. Her amended complaint asserted she had petitioned for the appointment of a personal representative for Vickers' estate "for the limited purpose of accepting service of process." On May 9, 2001, the probate court granted Pargman's petition to open Vickers' estate and subsequently appointed Pargman as the estate's personal representative.

¶ 15 Pargman then waived service of process. Even though Pargman had finally served Vickers' estate, her personal injury case remained dormant for most of the next year as the trial court stayed the case because Foundation had appealed the probate court's May 2001 order.

¶ 16 On June 13, 2002, this court affirmed the probate court's order appointing Pargman as the estate's personal representative. *In re Estate of Vickers,* 1 CA–CV 01–0355 (Ariz.App. June 13, 2002) (mem.decision). In so doing, we rejected Foundation's argument that Pargman had waited too long before attempting to open Vickers' estate. Applying A.R.S. § 14–3803(D)(2) (2003), we held the time limits for presenting claims against an estate, A.R.S. §§ 14–3803(A) and (B), were inapplicable because Pargman was only seeking to recover against the insurance proceeds available under Foundation's policy.[5]

4. Most tort claims survive the plaintiff's death. A.R.S. § 14–3110 (2003). However, A.R.S. § 14–3104 (2003) bars enforcement of such a claim against a decedent's estate until a personal representative is appointed to act on behalf of the estate ("[n]o proceeding to enforce a claim against the estate ... may be revived or commenced before appointment of a personal representative").

5. The probate code establishes cut-off dates for presenting claims against an estate. Under A.R.S. § 14–3801(B)(2003), a claimant must present a claim within four months after notice to present claims is published or within sixty days after delivery of actual notice. A claim that is not timely presented is barred. A claimant cannot, however, wait indefinitely for notice to be published or otherwise provided. Under A.R.S. § 14–3803(A)(1), the time limit for presenting claims against an estate is "[t]wo years after the decedent's death plus the time remaining in the period commenced by actual or published notice." Section 14–3803(D)(2) exempts claims made against an insurance policy protecting the decedent from the time limit imposed by A.R.S. § 14–3803(A)(1). Section 14–3803(D) states: "This section does not affect or prevent any of the following: ... [t]o the limits of the insurance protection only, any proceeding to establish liability of the decedent or the personal representative for which he is protected by liability insurance." In our memorandum decision, we explained:

Pargman's case against Vickers then returned to the trial court.

¶ 17 In November 2002, Foundation moved to dismiss Pargman's amended complaint. It asserted Pargman's personal injury claim—now against Vickers' estate—was time barred and did not "relate back" to the date of her original complaint under Rule 15(c).

¶ 18 Rule 15(c) allows a plaintiff to amend its complaint to change a defendant after the statute of limitations applicable to the claim has run if the claim arises from the "conduct, transaction, or occurrence" set out in the original complaint and, within the limitation period plus the period for service of the summons and original complaint, the party to be brought in has received sufficient notice of the institution of the action so as not to be prejudiced in defending against the claim and knew or should have known that but for a mistake concerning its identity, the plaintiff would have sued it. In pertinent part, Rule 15(c) [6] states:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom the claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, plus the period provided by Rule 4(i) for service of the summons and complaint, the party to be brought in by amendment, (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but

for a mistake concerning the identity of the proper party, the action would have been brought against the party.

¶ 19 Foundation contended, first, the two-year limitation period for personal injury claims expired no later than July 21, 1999,[7] and, second, Pargman's November 22, 2000 amended complaint could not relate back because the estate did not come into existence until May 2001 and, therefore, it could not have received notice of the action and knowledge that but for a mistake it would have been sued within the period prescribed by Rule 15(c).

¶ 20 The trial court granted Foundation's motion to dismiss, reasoning:

> The key issue here is whether "the party to be brought in by the amendment ... knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." Ariz. R. Civ. P. 15(c). If that question is answered in the affirmative, the amendment relates back and this motion should be denied.
>
> But the answer is not in the affirmative. There is no evidence in this record that "the party to be brought in" knew that Pargman had erroneously named Vickers and not her estate.

¶ 21 The court entered judgment dismissing Pargman's case with prejudice. Pargman timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B)(2003).

## DISCUSSION

¶ 22 The sole issue in this appeal is whether, under Rule 15(c), an amendment adding a decedent's estate as a party to an action filed after expiration of the applicable limitation period may relate back to the date of the

---

The reason for such a provision is obvious. Tort claims filed against an estate under the liability insurance exception do not affect the interests of the beneficiaries under the estate and thus present no obstacle to an orderly and exact administration of the estate.

*In re Estate of Vickers*, 1 CA–CV 01–0355 slip. op. at ¶ 15 (citations omitted).

6. Arizona's Rule 15(c) is modeled on its federal counterpart. *See* Fed.R.Civ.P. 15(c)

7. Foundation determined the July 21, 1999 date as follows: the accident occurred on March 18, 1997; three months and two days of the two-year limitation period had expired when Vickers died on June 21, 1997; the remaining limitation period (not quite 21 months) was suspended under state law, A.R.S. § 14–3802 (2003), for four months; the remainder of the limitation period began to run at the end of the four month suspension period; and, therefore, the limitation period expired no later than July 21, 1999.

original complaint that, by mistake, named only the decedent. The trial court found there could be no relation back because the party to be brought in—Vickers' estate—could not have had notice of Pargman's action and knowledge of her mistake within the time period specified under the rule. Because resolution of this issue presents an interpretation of a rule of procedure and, thus, presents an issue of law, we decide it de novo. *Greenwald v. Ford Motor Co.*, 196 Ariz. 123, 124, ¶ 4, 993 P.2d 1087, 1088 (App. 1999).

¶ 23 Rule 15 permits amendments in order to give parties an opportunity to adjudicate the merits of a claim. *E.g. Cagle v. Carr*, 101 Ariz. 225, 418 P.2d 381 (1966) ("[a]mendments to pleadings should be granted with great liberality so that cases may be decided on merits rather than on mere technicalities."). The relation back doctrine under Rule 15(c) balances a plaintiff's right to a hearing on the merits of a claim despite procedural or technical difficulties with a defendant's right to be protected from stale claims and the attendant uncertainty they cause. *See Ritchie v. Grand Canyon Scenic Rides*, 165 Ariz. 460, 464, 799 P.2d 801, 805 (1990).[8] In the context of adding or changing a party, the doctrine protects the to-be-added defendant by barring its addition unless the plaintiff proves notice, knowledge and timeliness.

¶ 24 First, the plaintiff must show that the party "to be brought in" received notice of the "institution," that is, filing, of the action so that it will not be prejudiced in maintaining a defense on the merits. *Id.* at 465, 799 P.2d at 806. The notice requirement is designed to deal with the dangers posed by stale claims.

¶ 25 Second, the plaintiff must show that the to-be-named defendant knew or should have known that the plaintiff would have sued it but for a mistake. This knowledge requirement "insures that the new defendant knew its joinder was a distinct possibility." James W. Moore, et al., *Moore's Federal Practice* § 15.19[3][d], at 15–91 (3d ed.2004). This requirement excludes from relation back tactical, strategic, although erroneous, decisions regarding whom to sue. *O'Keefe v. Grenke*, 170 Ariz. 460, 465, 825 P.2d 985, 990 (App.1992). The knowledge requirement effectuates a party's right to know whether it is going to be free from the risks of litigation.

¶ 26 Third, the plaintiff must show that the to-be-added defendant received the required notice and knowledge within the original limitation period plus the time allowed for service of process. This timeliness requirement further protects a defendant from stale claims and insecurity by subjecting the notice and knowledge requirements to a cutoff date.

¶ 27 Only if these prerequisites are satisfied, and only if the claim against the party to be brought in meets the last requirement of the rule, that the claim arose out of the same conduct, transaction or occurrence alleged in the original complaint, may an amendment changing a party relate back.

¶ 28 Here, the transactional requirement was never at issue. What was in dispute was whether Vickers' estate had notice of Pargman's action and knowledge of her mistake in serving Vickers and not her estate before the limitation period and time for service had expired. Foundation argues, and the trial court agreed, that the estate, through its personal representative, could not have received such notice and knowledge because the personal representative was not appointed by the probate court until May 2001, after

---

8. In *Ritchie*, our supreme court explained that the "legitimate purposes" of statutes of limitations are:

> (1) to protect defendants from stale claims, *see Brooks v. Southern Pacific Co.*, 105 Ariz. 442, 444, 466 P.2d 736, 738 (1970) (pursuit of a claim after an unreasonable amount of time may be thwarted when evidence may have been lost or witnesses' memories have faded); (2) to protect defendants from insecurity—economic, psychological, or both; Comment, *Developments in the Law: Statutes of Limitations*, 63 HARV. L. REV. 1177, 1185 (1950) ('there comes a time when he ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations'); and (3) to protect courts from the burden of stale claims.

165 Ariz. at 464, 799 P.2d at 805 (selected internal citations omitted).

the time specified by the rule had run. The flaw in Foundation's argument is that Foundation had notice of Pargman's action and knowledge of her mistake within the time prescribed by the rule and, under well-established principles, its notice and knowledge could be imputed to Vickers' estate.

¶ 29 Under certain circumstances, notice and knowledge may be imputed from an original defendant to a new defendant. This may happen when there is an "identity of interest" between the two. As we explained in *Ellman Land Corp. v. Maricopa County*, 180 Ariz. 331, 338 n. 9, 884 P.2d 217, 224 (App.1994), timely service on an original defendant "may provide timely, imputed, or constructive notice on a new defendant." Courts are "particularly amenable" to imputing notice when the new and original defendants share an identity of interest, such that they "are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Id.* at 224. Notice may also be imputed when the new and original defendants share the same attorney. *Id.*

¶ 30 The relationship needed to establish identity of interest for notice and knowledge under Rule 15(c) varies depending on the underlying facts. 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1499, at 147 (1990). Identity of interest has been found between a corporate parent and its wholly owned subsidiary, and between past and present forms of the same business enterprise. *Id.* at 147, 150. We have found an identity of interest between a county and a county assessor in a case where a taxpayer challenged a county assessor's real property valuation and sued the assessor when it should have sued the county. *Ellman*, 180 Ariz. at 338, 884 P.2d at 224. The assessor "was the very officer whose decision was the subject of the complaint" and had "particular reason to appreciate the complaint's significance and to relay it to the proper official for handling in preparation of a defense." *Id.*

¶ 31 Other relationships may give rise to imputation of notice and knowledge for purposes of relation back. Courts have recognized that where the to-be-added defendant's liability insurer had notice of the plaintiff's action and knew that but for a mistake the plaintiff would have sued its insured, the insurer's notice and knowledge will be imputed to the defendant insured.

¶ 32 *Smith v. TW Services, Inc.*, 142 F.R.D. 144 (M.D.Tenn.1991), is one such case. There, the plaintiff filed a slip and fall action against a restaurant licensor when the party she should have sued was the owner and operator of the restaurant, the licensee. *Id.* at 145. Before filing the case, the plaintiff submitted her claim to the licensee's insurance carrier. *Id.* After the limitation period had expired, the plaintiff moved to add the licensee as a defendant. *Id.* at 146. The court held the insurer's notice of the action and knowledge of the plaintiff's mistake could be imputed to the licensee. *Id.* at 149. Discussing the notice requirement of Rule 15(c) of the Federal Rules of Civil Procedure which is identical to the notice requirement under our Rule 15(c), the court stated:

> [T]he second ... requirement clearly obligates the plaintiff to provide only such notice sufficient to prevent prejudice in the maintenance of a defense. Intuitively, there is little prejudice to a defendant when his own liability insurer, who will likely be heavily involved in the defense, has notice of a suit within the limitations period. [The carrier] had full authority to investigate and settle the claim and would play a key role in the impending litigation. This is not a so-called "identity of interest" case, but there is still a substantial unity of interests between [the insurer] and [the insured] with respect to this litigation. Finally, [the insured] has neither alleged nor established any prejudice it might suffer in defending this suit.

*Id.*

¶ 33 A similar situation was presented in *Lagana v. Toyofuki Kaiun, K.K.*, 124 F.R.D. 555 (S.D.N.Y.1989). The plaintiffs, all longshoremen, were injured unloading a ship. At the time of the accident, the original defendant was the registered owner of the ship. *Id.* However, the registered owner had chartered the ship to another entity and that entity became the owner *"pro hac vice"* of

the ship and responsible for her operation. *Id.* at 556. The plaintiffs failed to sue the *pro hac vice* owner of the ship within the limitation period. *Id.* The liability insurer for the original defendant was also the liability insurer for the *pro hac vice* owner and had received notice of the litigation within the period prescribed under Federal Rule 15(c). The insurer retained a law firm to represent the registered owner which recognized that the plaintiffs had failed to name the *pro hac vice* owner. *Id.* at 556–57. By the time the plaintiffs attempted to amend their complaint to add the proper defendant, the limitation period had expired. *Id.* at 557. Nevertheless, the court held that the amended complaint related back under Rule 15(c). *Id.* at 558–59. The court imputed to the *pro hac vice* owner the notice and knowledge received by the insurer and the attorneys retained by the insurer, finding imputation consistent with the policies underlying Rule 15(c). *Id.* at 558.

¶ 34 See also *Korn v. Royal Caribbean Cruise Line, Inc.,* 724 F.2d 1397 (9th Cir. 1984) (timely notice to insurer of new defendant inadvertently omitted from complaint was sufficient notice to new defendant that it would not be prejudiced in defending action on the merits); *Red Arrow Stables, Ltd. v. Velasquez,* 725 N.E.2d 110 (Ind.Ct.App.2000) (timely notice of lawsuit to insurer was constructive notice to insured for relation back; insurer was entitled to investigate claim and had right and duty to defend).

¶ 35 The approach taken by the court in *Smith* and cases like it has been applied by courts when called upon to decide whether an amended complaint naming a decedent's estate may relate back to the date of the original complaint that, by mistake, named only the decedent. Courts have held that an amendment to add an estate as a new party may relate back to the date of the original complaint when the assets of the estate are liability insurance proceeds and the insurer had notice of the action and knowledge of the plaintiff's mistake in suing the insured decedent within the time prescribed by the relation back rule. These courts have recognized that, as a practical matter, the insurer is the real party in interest and unless it or the estate is prejudiced by the amendment, there is no unfairness in allowing relation back.

¶ 36 For example, in *Hamilton v. Blackman,* 915 P.2d 1210 (Alaska 1996), the plaintiffs were involved in a car accident. The driver of the other car died in the accident. *Id.* at 1216. The plaintiffs submitted their claim to the driver's liability insurer. Before their claim became time barred, the plaintiff sued the deceased driver and served the driver's wife as the estate's personal representative, even though she had never been appointed to act in that capacity. *Id.* at 1212. The original defendant, the deceased driver (represented by a law firm retained by the insurer), moved to dismiss asserting that the plaintiffs had failed to sue the proper party, the estate. *Id.* The trial court agreed and dismissed the case.

¶ 37 The Alaska Supreme Court reversed. *Id.* at 1218. It found that the plaintiffs were entitled to petition the probate court for the appointment of a personal representative and to move to amend their complaint to add the estate, assuming the relation back requirements governing Alaska Civil Rule 15(c) (which were identical to Arizona Rule 15(c)) were satisfied. *Id.* Explaining that the "touchstone" of the relation back doctrine was fairness, the court noted it appeared that the driver's insurer had actual notice and knowledge of the lawsuit and, consequently, the relation back requirements were met:

> It is the Estate of William Blackmon, not State Farm, that [plaintiffs] will seek to bring into the case when they sue the estate's personal representative. As the estate has not yet been opened it could not have notice of the claim against it; it would therefore be impossible to satisfy the literal terms of Civil Rule 15(c). However, State Farm is the only entity with exposure for damages liability as a result of [plaintiffs'] action. Under these circumstances, actual notice to State Farm suffices to meet the notice requirements of Civil Rule 15(c).

*Id.* at 1218 n. 12.

¶ 38 In *Craig v. Ludy,* 95 Wash.App. 715, 976 P.2d 1248 (1999), the court was faced with a situation similar to that presented in

*Hamilton.* The plaintiffs had sued the defendant, unaware he had died. The trial court denied a motion filed by the plaintiffs to add the defendant's estate as a party, holding the amendment would not relate back. *Id.* at 1250. The court explained the critical issue was whether the decedent's estate "had notice of the action and knew or should have known it would have been named as a defendant but for the [plaintiffs'] mistake." *Id.* at 1251. The court imputed the defendant's insurer's notice and knowledge to the estate and found in favor of relation back:

> In this case, [the decedent defendant's insurer] certainly had notice of this action. Presumably, counsel retained by the insurer to represent its insured would be required to defend the suit regardless of whether Mr. Ludy were alive or dead. Counsel has not alleged the amendment would cause any prejudice to the insurer or to Mr. Ludy's estate. There thus was a sufficient community of interest that notice of the action may be imputed to the estate. Finally, the estate (through its insurer) knew that, but for the [plaintiffs'] mistake, the action would have been brought against it. All the requirements of CR 15(c) are satisfied.

*Id.* (footnote omitted).

¶ 39 Other jurisdictions have also recognized that an amended complaint adding or substituting the decedent's estate for the decedent will relate back when the plaintiffs were seeking insurance proceeds and the insurer had actual notice and knowledge of the suit within the required time frame. *See Ind. Farmers Mutual Ins. Co. v. Richie,* 707 N.E.2d 992 (Ind.1999); *Macias v. Jaramillo,* 129 N.M. 578, 11 P.3d 153 (Ct.App.2000).

█ ¶ 40 The approach to relation back taken in the cases discussed above is consistent with Arizona's view of the intent and

purpose of relation back. We apply that approach here. Pargman sued Vickers by mistake, unaware she had died. Within the time specified under Rule 15(c), Foundation knew of Pargman's lawsuit and that Pargman had mistakenly sued Vickers when she should have sued Vickers' estate.[9] The trial court should have imputed Foundation's notice and knowledge to Vickers' estate.

¶ 41 Allowing Vickers' estate to be brought into the case will not change Foundation's defense obligations under its policy. It would have been required to defend Vickers had she not died. Nor will it change Foundation's indemnity obligations. Although, in order to pursue her claim, Pargman was required to name Vickers' estate, the substance of the amended complaint effected no real change as Pargman's claim remained the same.

¶ 42 The approach we adopt to relation back does not, we emphasize, transform an insurer into an agent for service of process or allow an injured person to bring a direct action against an insurer.[10] We are dealing with the notice and knowledge requirements of Rule 15(c) and whether, on the facts before us, they were met for purposes of relation back. We hold they were.

¶ 43 We acknowledge that other courts have refused to allow relation back in circumstances similar to those presented here. *See Parker v. Breckin,* 620 A.2d 229 (Del.1993); *Gailor v. Alsabi,* 990 S.W.2d 597 (Ky.1999). The results reached in these cases reflect a strict and narrow application of the relation back doctrine. Such a construction is at odds with the remedial purpose of Rule 15(c) and the liberal construction we give to relation back in Arizona. *See Ritchie,* 165 Ariz. at 467, 799 P.2d at 808; *Ellman,* 180 Ariz. at

---

9. In granting Foundation's motion to dismiss, the trial court also stated that there was not "even evidence that Vickers' insurance carrier knew of the error, although it must be noted that Foundation was not the 'party to be brought in.' " The record presented to the trial court, however, shows that Foundation's lawyer and adjuster knew before July 21, 1999 of Pargman's lawsuit and the necessity of suing Vicker's estate. *See* ¶ 8 and note 7 *supra.*

10. Arizona follows the general rule that, in the absence of a contractual or statutory provision to the contrary, an injured person has no direct cause of action against a tortfeasor's insurance company. *Maricopa County v. Barfield,* 206 Ariz. 109, 113, ¶ 13, 75 P.3d 714 (App.2003).

340, 884 P.2d at 226.[11]

insurer and the estate and the other requirements of Rule 15(c) are satisfied.

¶ 45 The judgment dismissing Pargman's action is reversed. This matter is remanded to the trial court for further proceedings consistent with this decision.

## CONCLUSION

¶ 44 When, as here, a plaintiff files a complaint and mistakenly names a deceased defendant instead of the decedent's estate and, when, as here, the assets of the estate consist of liability insurance proceeds and the insurer had notice of the plaintiff's action and knowledge of the plaintiff's mistake within the period prescribed by Rule 15(c), an amended complaint naming the estate will relate back to the date of the original complaint provided there is no prejudice to the

WINTHROP, P.J. and LANKFORD, J., concurring.

11. Citing *O'Keefe v. Grenke*, 170 Ariz. 460, 825 P.2d 985 (App.1992), Foundation argues Pargman's failure to name Vickers' estate is not the type of mistake that qualifies for relation back.

The mistake made by Pargman was not the result of a tactical, strategic decision. Pargman thought she had sued the right defendant. She did not realize, however, that Vickers had died.