257 P.3d 1182

**WB, THE BUILDING COMPANY, LLC an Idaho limited liability company, Plaintiff/Appellant,**

v.

**EL DESTINO LP, an Arizona limited partnership; Community Development, Inc., an Idaho Corporation, doing business as West Coast Affordable Housing, Inc., an Idaho Corporation Defendants/Appellees.**

No. 1 CA–CV 10–0077.

Court of Appeals of Arizona, Division 1, Department A.

June 2, 2011.

Sherman & Howard, LLC. By Arthur W. Pederson, David W. Garbarino, Christopher W. Payne, Phoenix, Attorneys for Plaintiff/Appellant.

Perkins Coie LLP, By Tawn T. Pritchette, Craig A. Morgan, Phoenix, Attorneys for Defendants/Appellees.

## OPINION

WINTHROP, Judge.

¶ 1 WB, the Building Company, LLC ("WB"), an Idaho limited liability company, appeals from a grant of summary judgment in favor of El Destino, LP, an Arizona limited partnership, and Community Development, Inc., an Idaho corporation dba West Coast Affordable Housing (collectively "Appellees"). WB argues that the court erred by not compelling arbitration in this matter. Alternatively, WB contends that the court erred in granting summary judgment. WB also challenges the award of attorneys' fees and costs. For the reasons set forth below, we affirm on the merits, but vacate the award of attorneys' fees and costs and remand that issue to the superior court.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Wright Brothers, The Building Company ("Wright Brothers"), an Idaho Corporation, is a "general construction and construction management company." At the urging of its insurer, Wright Brothers formed WB to manage its residential construction projects while Wright Brothers focused solely on commercial construction. The directors of Wright Brothers hold the exact same positions for WB, and Wright Brothers is the only guarantor and member of WB. Wright Brothers had a history of working for Appellees to develop real estate in multiple states.

¶ 3 In March, 2006, WB and Appellees entered a construction contract wherein WB was retained by Appellees to improve and develop real property in Santa Cruz County, Arizona. The contract was signed by Appellees' manager and Joseph Rausch in his capacity as WB's vice president (Rausch held the same position for Wright Brothers). The

contract contained the following relevant arbitration provisions ("the arbitration agreement"):

§ 4.6.1 Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Section 4.5.

§ 4.6.2 Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect.

Subsequently, Appellees signed an amendment that was executed by Robert A. Wright in his capacity as Wright Brothers' president (Wright held the same position with WB). The "Contractor's Certification and Representations" listed only WB as the contractor and was signed by Rausch, but the contract did not denote whether he was acting in his capacity as the vice president of WB or Wright Brothers. Construction began on the project in April, 2006.

¶ 4 On March 25, 2008, WB filed an amended complaint in the Arizona Superior Court claiming that Appellees had breached the contract and requesting additional relief on grounds of equitable estoppel, promissory estoppel, and unjust enrichment/*quantum meruit*. WB also requested that the court stay the proceedings so that the parties could engage in arbitration as required by the contract. On September 15, 2008, the court issued an order staying proceedings until the arbitrator issued a final decision or until the court received an application to affirm or enter an arbitration award.

¶ 5 On November 25, 2008, Appellees filed an "OMNIBUS MOTION TO LIFT STAY, FOR SUMMARY JUDGMENT, AND FOR INDEFINITE STAY OF ARBITRATION PROCEEDINGS" ("the Omnibus motion"). While engaged in arbitration, Appellees discovered that WB had not been licensed as a contractor when it entered the agreement and had not been licensed when construction commenced. In fact, WB had not received a contractor's license until October 5, 2006—almost six months after WB entered the contract. Appellees argued that both the contract and the arbitration clause were, therefore, void and unenforceable pursuant to Arizona Revised Statutes ("A.R.S.") section 32-1151 (2008) and that WB was barred from obtaining relief pursuant to A.R.S. § 32-1153 (2008). WB responded that a stay of arbitration would be inappropriate as the issue of whether the contract was valid was a matter for the arbitrator alone to decide, and not one for the court to consider. Further, WB argued that summary judgment would be inappropriate as there were genuine issues of material fact regarding WB's substantial compliance with Arizona licensing laws and whether Wright Brothers was a party to the contract.[1]

¶ 6 On February 12, 2009, the court lifted the stay and granted summary judgment, stating that the arbitration clause was not legally enforceable and WB was barred from relief because it did not have a contractor's license when it entered the contract. On November 19, 2009, the court granted Appellees' application for attorneys' fees and expenses. WB timely appealed the grant of attorneys' fees and also filed a motion for a new trial. We suspended the appeal to allow the trial court to make a ruling on WB's pending motion for a new trial.

¶ 7 On April 14, 2010, the court issued a final judgment. The judgment denied WB's motion for a new trial and also incorporated the court's minute entries of February 12, 2009, and September 25, 2009.[2] The final

---

1. Wright Brothers is not a party in the instant proceedings.

2. The final judgment also vacated the prior judgment dated January 12, 2010, and the order dated January 13, 2010.

judgment also awarded Appellees $200,000.00 for their reasonable attorneys' fees; $225,988.41 for their non-taxable expenses; and $6,701.72 for their taxable costs. WB timely appealed.

¶ 8 We have jurisdiction pursuant to A.R.S. §§ 12–2101(B) and (F)(1) (2003), and 12–2101.01(A)(2) (2003).

## DISCUSSION

¶ 9 On appeal, WB contends that the court lacked authority to determine whether the contract was void and was required to compel arbitration on the matter. WB argues that the arbitrator is the only entity that may make a determination on the validity of the contract. Appellees respond that the court was correct in finding that the arbitration agreement was invalid and unenforceable, and therefore, considering their motion for summary judgment. In the alternative, WB contends that granting summary judgment was inappropriate as there are genuine issues of material fact. Finally, WB argues that the awards of attorneys' fees and costs were excessive, unreasonable, and unsubstantiated.

### I.  Validity of Arbitration Clause

¶ 10 WB contends that the subject matter of the contract implicates interstate commerce, and therefore, the Federal Arbitration Act applies to this analysis. *See* 9 U.S.C. §§ 2 and 4 (West 2010); *see also Southland Corp. v. Keating*, 465 U.S. 1, 14–15, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (finding that the term "involving commerce" in 9 U.S.C. § 2 implicates Congress' interstate commerce powers, and therefore, the Federal Arbitration Act is "intended to apply in state and federal courts"). On the other hand, section 13.1.1 of the contract states that the governing law is "the law of the place where the Project is located," in this case, Arizona. We note that the relevant state statutes, A.R.S. §§ 12–1501 (2003) and

12–1502 (2003) are substantially similar in scope and purpose to 9 U.S.C. §§ 2 and 4. *See, e.g., U.S. Insulation, Inc. v. Hilro Const. Co., Inc.*, 146 Ariz. 250, 253, 705 P.2d 490, 493 (App.1985) (stating that section 4 of the Federal Arbitration Act is "very similar in purpose to A.R.S. § 12–1502."). Given the substantial similarities between the statutory schemes, we believe that the same analysis is mandated by both sets of statutes.

¶ 11 We begin our analysis by recognizing that both federal and state public policies weigh heavily in favor of enforcing arbitration agreements. *See Stevens/Leinweber/Sullens, Inc. v. Holm Dev. & Mgmt., Inc.*, 165 Ariz. 25, 29–30, 795 P.2d 1308, 1312–13 (App.1990) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *U.S. Insulation*, 146 Ariz. 250, 705 P.2d 490; *New Pueblo Constructors, Inc. v. Lake Patagonia Recreation Ass'n, Inc.*, 12 Ariz.App. 13, 467 P.2d 88 (1970)). Although public policy supports such enforcement, it is also well-established that arbitration agreements are severable from the rest of the contract, and therefore, a court may only stay arbitration if there is a challenge to the arbitration clause itself.[3] *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) (stating that "an arbitration provision is severable from the remainder of the contract" and "the issue of the contract's validity is considered by the arbitrator in the first instance"); *see also Rent–A–Center, West, Inc. v. Jackson*, — U.S. ——, 130 S.Ct. 2772, 2778, 177 L.Ed.2d 403 (2010) (noting that arbitration agreements are not "unassailable" and that "the federal court must consider the challenge [to the

---

**3.**  We note that at the time Appellees challenged the validity of the arbitration agreement, the parties were already engaged in arbitration. WB has not argued that, by engaging in arbitration, Appellees have waived their right to challenge the arbitration clause. Further, Arizona law suggests that the validity of an arbitration clause or

agreement may be challenged even after arbitration has commenced. *See* A.R.S. § 12–1502(B) ("On application, the *court may stay an arbitration proceeding commenced* or threatened on a showing that there is no agreement to arbitrate.") (Emphasis added).

arbitration agreement] before ordering compliance with that agreement"); *Stevens,* 165 Ariz. at 26–30, 795 P.2d at 1309–13 (concluding that "the enforceability of an arbitration provision is to be determined by considering the provision as an independent agreement, separate from the underlying contract" and also recognizing that "A.R.S. §§ 12–1501 and 12–1502 embody the concept of separability endorsed by the United States Supreme Court"). Accordingly, "[o]nly when the arbitration provision is enforceable will the court compel arbitration." *Stevens,* 165 Ariz. at 30, 795 P.2d at 1313; *see also Granite Rock Co. v. Int'l Bhd. of Teamsters,* — U.S. —, 130 S.Ct. 2847, 2856, 177 L.Ed.2d 567 (2010) (reemphasizing that an arbitration agreement may only be enforced when the court is satisfied that there are no issues challenging the formation or applicability of the arbitration clause at bar).

¶ 12 WB contends that Appellees' challenge relates only to the underlying contract, and not the arbitration agreement itself. In support of its contention, WB cites multiple cases holding that, unless parties specifically challenge the arbitration agreement itself, the validity of the underlying contract is a matter solely for arbitration. *See, e.g., Rent–A–Center,* 130 S.Ct. at 2778 (finding that even "where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract-we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene."); *Buckeye,* 546 U.S. at 445–46, 126 S.Ct. 1204 (reaffirming the proposition that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance"); *Teledyne, Inc. v. Kone Corp.,* 892 F.2d 1404, 1410 (9th Cir.1989) (recognizing that "cases [must] be submitted to arbitration unless there is a challenge to the arbitration provision which is *separate* and *distinct* from any challenge to the underlying contract" (citation omitted)). WB argues that, because Appellees specifically claim that both the arbitration agreement and the underlying contract are void pursuant to §§ 32–1151 and 32–1153, Appellees fail to make a separate and distinct challenge to the arbitration agreement. We disagree.

■ ¶ 13 WB has provided us with no case law, nor have we found any, that requires arbitration agreements to be challenged on wholly separate grounds. In fact, case law suggests that the same grounds may be used to challenge both an arbitration agreement and the underlying contract so long as an arbitration agreement itself is separately and distinctly challenged on those grounds. *See Prima Paint,* 388 U.S. at 403–04, 87 S.Ct. 1801 (stating that "if the claim is fraud in the inducement of the arbitration clause itself-an issue which goes to the 'making' of the agreement to arbitrate-the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally"); *accord U.S. Insulation,* 146 Ariz. at 253–54, 705 P.2d at 493–94. In this case, Appellees clearly stated in the Omnibus motion that the alleged violations of § 32–1151 *et al.* "[r]ender *Both the Contract and Arbitration Agreement* Void." (Emphasis added). Further, Appellees specifically referenced § 12–1502 in the Omnibus motion for the particular purpose of showing that "WB's conduct ha[d] rendered the arbitration provision in the contract void and unenforceable." Appellees requested two separate and distinct forms of relief; that the court should stay the pending arbitration proceedings because the arbitration agreement was invalid, and that summary judgment should be granted in their favor on the merits due to WB's violation of the Arizona licensing requirements. Further, WB filed two different responses, one addressing Appellees' motion to lift the stay and to stay the arbitration proceedings, the other addressing the motion for summary judgment. The record shows, therefore, that not only did Appellees challenge the validity of the arbitration agreement separately and distinctly from their challenge of the underlying contract, but that WB understood that two separate and distinct challenges had been made.[4]

4. In its brief and at oral argument, WB heavily relied on *Buckeye* to support its position that the court below improperly considered Appellees' challenge. We find that *Buckeye* is distinguish-

¶ 14 Having determined that Appellees challenged the arbitration agreement itself and not just the contract generally, we may now consider whether the court properly held that the arbitration agreement was void. An arbitration agreement may be challenged "upon such grounds as exist at law or in equity for the revocation of any contract," including, but not limited to, "lack of mutual consent, consideration or capacity . . . fraud, duress, lack of capacity, mistake, or violation of a public purpose." *U.S. Insulation*, 146 Ariz. at 253, 705 P.2d at 493; *accord Stevens*, 165 Ariz. at 28–29, 795 P.2d at 1311–12; *see also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (stating that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements" without violating federal law).

¶ 15 In relevant part, § 32–1151 states:

It is *unlawful* for any person, firm, partnership, corporation, association or other organization, or a combination of any of them, *to engage in the business of,* submit a bid or respond to a request for qualification or a request for proposals for construction services as, *act or offer to act in*

*the capacity of or purport to have the capacity of a contractor without having a contractor's license* [.]

(Emphases added). There is no dispute that, at the time the contract including the arbitration agreement was executed, WB did not possess a contractor's license. Because it was not licensed, it was unlawful for WB to engage in the business of contracting and to act as, or purport to have the capacity of, a contractor.[5] Accordingly, WB lacked the capacity to validly enter any agreements, including the arbitration agreement, while acting as a contractor. Further, WB's actions violated the public purpose sought to be protected in § 32–1151. *See City of Phoenix v. Superior Court In and For County of Maricopa,* 184 Ariz. 435, 437, 909 P.2d 502, 504 (App.1995) (stating that the purpose of § 32–1151 is " 'to provide protection for the public that contractors have the requisite skill and ability to perform the required work.' " (citing *City of Phoenix v. Superior Court,* 109 Ariz. 533, 537, 514 P.2d 454, 458 (1973))). Given these defects, the arbitration agreement between WB and Appellees should be considered void, or at the very least, voidable. Accordingly, the court properly refused to enforce it.[6]

---

able from the case at bar. In *Buckeye,* the Supreme Court reaffirmed that "regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Id.* at 449, 126 S.Ct. 1204. In *Buckeye,* it is clear that the respondents challenged only the validity of the contract as a whole. *Buckeye,* 546 U.S. at 443, 126 S.Ct. 1204. In the instant case, Appellees specifically challenged the validity of the arbitration agreement separate and apart from their challenge to the contract. The court in *Buckeye* only required that a party contesting a contract with an arbitration agreement challenge separately the validity of the arbitration agreement "upon such grounds as exist at law or in equity for the revocation of any contract" in order for the court to properly intervene. *Id.* at 444, 126 S.Ct. 1204. Unlike the respondents in *Buckeye,* Appellees in the instant case have made the exact type of challenge required by the Supreme Court, and therefore, the trial court properly intervened to consider and render judgment on the validity of the arbitration agreement.

**5.** We note that substantial compliance with the licensing requirements set forth in § 32–1151 *et*

*al.* may render an otherwise unenforceable contract or arbitration agreement with an unlicensed contractor enforceable. *See Aesthetic Prop. Maint., Inc. v. Capitol Indem. Corp.,* 183 Ariz. 74, 77–78, 900 P.2d 1210, 1213–14 (1995). For the reasons discussed in the next section, we hold that WB has failed to substantially comply with the licensing requirements and, therefore, neither the arbitration agreement nor the contract itself are enforceable pursuant to § 32–1153.

**6.** This instant opinion is distinguishable from our recent opinion in *Smith v. Pinnamaneni,* 227 Ariz. 170, 254 P.3d 409 (App.2011). In *Smith,* the court held that a defendant could (and did) waive the licensure defense provided in § 32–1153 when it failed to raise the issue of the contractor's lack of compliance with the licensing requirements during arbitration; an issue not raised or addressed in the instant case. *Id.* at 176, ¶ 20, 254 P.3d at 415. Perhaps most importantly, the defendant in *Smith,* unlike Appellees, did not lodge a separate and distinct challenge contesting the validity of the arbitration agreement itself or argue that the arbitration agreement was independently void and/or unenforceable. *Id.* at 172 n. 3, ¶ 5, 254 P.3d at 411 n. 3.

¶ 16 The final judgment entered by the court states:

> The simple, straight-forward analysis is that while the parties may essentially arbitrate anything they wish, and the parties clearly did agree to arbitrate, the arbitration provisions can only be enforced by going to court. However, going to court is something that [WB] is precluded from doing pursuant to A.R.S. § 32–1153. Therefore, the arbitration hearing and decision would not be legally enforceable; thus, there is no reasonable basis for requiring the parties to arbitrate.

Initially, we note that the only issue before the court was whether the court could enforce the arbitration agreement and compel arbitration, and therefore, issues relating to the court's ability to later confirm the award were not yet ripe for consideration. Further, we disagree with the court's circular reasoning that its potential inability to confirm an arbitration award pursuant to § 32–1153 precluded it from enforcing an otherwise valid arbitration agreement and compelling arbitration. As WB points out in its brief—if the court had compelled arbitration, the issue of WB's compliance with the licensing statutes would have been determined by the arbitrator, and therefore, would not have been an issue for the court to consider during a confirmation/enforcement proceeding. If the arbitrator had found that WB substantially or otherwise complied with the licensing requirements, the court would not have been barred from confirming the subsequent award. Nonetheless, we will "affirm the trial court when it reaches the correct conclusion even if it does so for an incorrect reason." *United Effort Plan Trust v. Holm,* 209 Ariz. 347, 351, 101 P.3d 641, 645 (App.2004).

## II. Summary Judgment and Substantial Compliance

¶ 17 Because the court properly determined that the arbitration agreement itself was unenforceable, it properly considered Appellees' accompanying motion for summary judgment. WB makes two arguments in opposing the court's grant of summary judgment: 1) that WB substantially complied with the licensing requirements, and therefore, is not precluded from seeking relief under § 32–1153; and, 2) that Wright Brothers was a party to the contract, and being duly licensed as a contractor in Arizona at the time of executing the contract, the contract and construction were covered under Wright Brothers' license. WB argues that, at the very least, the facts supporting these arguments render the grant of summary judgment inappropriate. "We review the grant of summary judgment *de novo.*" *Amtrust Bank v. Fossett,* 223 Ariz. 438, 439, ¶ 4, 224 P.3d 935, 936 (App.2009) (noting that summary judgment is proper when the record shows there is no genuine issue of material fact. (citations omitted)).

¶ 18 Addressing WB's first argument, we note that § 32–1153 states:

> *No contractor* as defined in § 32–1101 *shall* act as agent or *commence or maintain any action in any court of the state for collection of compensation for the performance of any act for which a license is required* by this chapter *without alleging and proving that the contracting party* whose contract gives rise to the claim *was a duly licensed contractor when the contract sued upon was entered into* and when the alleged cause of action arose.

(Emphases added). A contractor need only substantially comply with the licensing requirements to avoid being barred from relief under § 32–1153. *See Aesthetic Prop.,* 183 Ariz. at 77–78, 900 P.2d at 1213–14. As WB itself acknowledges, however, "a failure to be financially responsible *or to knowingly ignore the registration requirements is fatal*" when trying to prove substantial compliance with the licensing laws. *Crowe v. Hickman's Egg Ranch, Inc.,* 202 Ariz. 113, 115–16, ¶¶ 10–11, 41 P.3d 651, 653–54, (App.2002) (emphasis added) (stating further that "The contractor bears the burden of proof to demonstrate substantial compliance" (citation omitted)).[7]

---

7. In addition to the two mandatory or "fatal" requirements, the court must also examine the following factors in a substantial reliance analysis: whether the Registrar of Contractors con- tributed to noncompliance; if, upon learning of the noncompliance, the contractor acts swiftly to remedy the situation; and, whether the failure to

**310**

¶ 19 In this case, WB falls short of showing substantial compliance as a matter of law when it failed to present sufficient evidence that it did not knowingly ignore the registration requirements. There are several documents and/or communications in the record conclusively showing that WB knew that it was unlicensed in Arizona and that it knew it needed to obtain a license. Further, Wright Brothers was properly licensed in Arizona at the time the contract was signed and had known of the license requirements since at least 2004. Given that WB and Wright Brothers shared the same management and board members, and that WB's only member and guarantor was Wright Brothers, any contention that WB lacked knowledge of the licensing requirements is factually unsupportable, and cannot serve to create a genuine issue of fact. *Cf. Gatecliff v. Great Republic Life Ins. Co.*, 170 Ariz. 34, 37–38, 821 P.2d 725, 728–29 (1991) (finding that, under an "alter ego" theory, a parent corporation may be held liable for the acts of its subsidiary if the two entities are so closely related that it is fair to treat them as the same entity); *Pargman v. Vickers*, 208 Ariz. 573, 579, ¶¶ 29–31, 96 P.3d 571, 577 (App. 2004) (recognizing that the court may impute notice and knowledge from one corporate defendant to a second closely related corporate defendant under an "identity of interest" theory).

¶ 20 Alternatively, WB argues that Wright Brothers was an unnamed party to the contract, and therefore, Wright Brothers' license applied to the work done pursuant to this contract. WB contends that the record shows that Appellees treated Wright Brothers and WB as the same company and should not be allowed to treat them differently now.

When interpreting a contract, "parol evidence may be used to explain an ambiguous contract, but in the absence of fraud or mistake, it may not be used to change, alter or vary the express terms in a written agreement." *Brand v. Elledge*, 101 Ariz. 352, 358, 419 P.2d 531, 537 (1966).

¶ 21 In this case, there is simply no ambiguity in the contract that would allow us to consider the parol evidence offered by WB in support of its assertion that Wright Brothers was a party (or was considered to be a de facto party) to the contract. The contract itself lists only WB as the contractor, and makes no mention whatsoever of Wright Brothers. Although the Amendment is signed by Robert A. Wright, purportedly in his capacity as Wright Brothers' President, nothing in the amendment casts doubt or creates ambiguity on the identity of WB as the only contractor for this project.[8] The intent of the parties to have WB act as the sole contractor on this project is clear and unambiguous. Under these circumstances, the signature of Mr. Wright on the amendment is insufficient as a matter of law to create genuine issue of material fact. *See Orme School v. Reeves*, 166 Ariz. 301, 311, 802 P.2d 1000, 1010 (1990) (holding that "a scintilla of evidence or a slight doubt" is insufficient to create a genuine issue of material fact and render summary judgment inappropriate). Accordingly, we cannot find from the language of the contract or the amendment that Wright Brothers was ever a party to this contract. Finally, even if Wright Brothers had been a party to the contract, we do not believe that WB—as the named contractor—would have been covered under Wright Brothers' license. *See, e.g., B & P*

comply prejudiced the other party. *See Crowe*, 202 Ariz. at 115–16, ¶¶ 10–11, 41 P.3d at 653–54.

8. The amendment specifically states that "[t]he undersigned [Robert A. Wright] hereby warrant that they are authorized to sign the Contract Documents on behalf of the Contractor and that the other party may rely on this representation...." We also reiterate the fact that Mr. Wright holds the same position for WB and was authorized to act on WB's behalf. The contract unambiguously states that the contractor was WB, and the amendment did not change the identity of the contractor. The plain language of the amendment stating that the undersigned was acting on behalf of the contractor leads us, therefore, to one conclusion—Mr. Wright's signature was made on behalf of WB and not Wright Brothers. Further, the record contains a December, 2004 email between the parties wherein Wright Brothers informs Appellees about the creation of WB and WB's purpose of handling residential development work. This suggests that, contrary to WB's arguments, Appellees were well aware that there were two separate entities handling two different types of work and did not, therefore, treat the entities the same.

*Concrete, Inc. v. Turnbow*, 114 Ariz. 408, 410–11, 561 P.2d 329, 331–32 (App.1977) (interpreting an earlier but substantially similar version of §§ 32–1151 and 32–1153 and finding that, although barring unlicensed contractors from bringing actions in court resulted in "harsh consequences," the licensing statutes must be strictly applied and that, therefore, an unlicensed contractor would be barred from recovering "notwithstanding that its president and managing employee had the required license").

¶ 22 In short, WB did not substantially comply with the licensing requirements and Wright Brothers was not an actual or de facto party to the agreement. Accordingly, we reject WB's argument that a new trial should be granted and affirm the court's grant of summary judgment.

### III. Costs and Attorneys' Fees

¶ 23 Finally, WB contests the award of attorneys' fees and costs. Appellees were awarded $200,000.00 in attorneys' fees pursuant to A.R.S. § 12–341.01 (2003); $225,988.41 for "non taxable expenses" pursuant to A.R.S § 12–341 (2003); and, $6,701.72 for "taxable costs" pursuant to A.R.S. § 12–332 (2003). WB first argues that fees and costs relating to the arbitration were improperly awarded.[9] WB also argues that the award of attorneys' fees and costs are unsubstantiated and/or excessive. Generally, we will not reverse an award of attorneys' fees and costs "absent an abuse of discretion." *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265, ¶ 18, 99 P.3d 1030, 1035 (App.2004).

¶ 24 WB argues that arbitration is not an "action" for the purposes of § 12–341.01, and therefore, is not a proceeding from which fees may be awarded pursuant to that section.[10] This issue is primarily one of statutory construction.

¶ 25 We begin our analysis by noting that the term "action" is statutorily defined as "any matter or proceeding in a court, civil or criminal." A.R.S. § 1–215 (Supp.2010); *accord Keystone Floor & More, L.L.C. v. Arizona Registrar of Contractors*, 223 Ariz. 27, 30, ¶¶ 8–9, 219 P.3d 237, 240 (App.2009); *but cf., Fid. Nat'l Fin. Inc. v. Friedman*, 225 Ariz. 307, 310, ¶¶ 16–18, 238 P.3d 118, 121 (2010) (determining that the definition of "action" set forth in § 1–215 was not the definition applicable to A.R.S. §§ 12–1551 (Supp. 2010) and –1611 (2003); adopting instead an earlier common law definition of "action" and applying it to suits involving "action *on* a judgment"). If a matter is resolved pursuant to a valid arbitration agreement, any award of fees and costs is governed by the general prohibition on fees in § 12–1510. Although the parties here engaged in arbitration, § 12–1510 does not apply because the arbitration agreement was unenforceable. Appellees were the successful party in a court action arising out of contract. Accordingly, the question before us now is whether arbitration is an "action" from which such prevailing party may recover fees pursuant to § 12–341.01.

¶ 26 WB relies on two cases, *Semple v. Tri–City Drywall, Inc.*, 172 Ariz. 608, 838 P.2d 1369 (App.1992) and *Canon Sch. Dist. No. 50 v. W.E.S. Const. Co., Inc.*, 180 Ariz. 148, 882 P.2d 1274 (1994), to support its contention that arbitration is not an action for which fees may be recovered under § 12–341.01.

¶ 27 The issue decided in *Semple* was whether a prevailing party could recover its attorneys' fees incurred in administrative proceedings before the Registrar of Contractors. *See Semple*, 172 Ariz. at 611, 838 P.2d at 1372. Though the court recognized that administrative agencies act "in a quasi-judicial capacity," it determined that "an admin-

---

9. Because we are holding that the arbitration agreement is void and/or voidable, we do not address WB's arguments that A.R.S. § 12–1510 (2003) precludes an award of attorneys' fees. For the same reason, we also decline to consider Appellees' arguments that fees and costs may be awarded pursuant to either the Federal Arbitration Act or the Construction Industry Arbitration Rules of the American Arbitration Association.

All of these arguments apply only if an arbitration agreement is valid and enforceable.

10. Under § 12–341.01, reasonable attorneys' fees may only be recovered from "any contested *action* arising out of a contract." (Emphasis added). Similarly, § 12–341 only allows recovery of costs by the "successful party to a *civil action*." (Emphasis added).

istrative agency [cannot] be characterized as a court so that a proceeding before it could be called an 'action' for purposes of A.R.S. [§ ] 12–341.01." *Id.* at 611, 838 P.2d at 1372. The court concluded that "looking at A.R.S. [§ ] 12–341.01 in its entirety, there simply is no indication that the legislature intended [it] to apply to attorney's fees incurred by the prevailing party in an administrative proceeding." *Id.* at 611–12, 838 P.2d at 1372–73 (citing *McEldowney v. Osborn Sch. Dist. No. 8 Maricopa County,* 123 Ariz. 416, 418, 600 P.2d 29, 31 (1979)).

¶ 28 In *Canon,* the supreme court was asked to consider the very issue of whether arbitrations were "actions" under § 12–341.01, albeit, under different factual circumstances than in the instant case. *See Canon,* 180 Ariz. at 150, 882 P.2d at 1276. The court decided not to address the issue, instead determining that § 12–1510 barred the court from awarding fees in the case before it. *Id.* at 151, 882 P.2d at 1277. The court expressly noted, however, that the analysis in *Semple* suggested that arbitration would not be considered an action under § 12–341.01. *Id.*

■ ¶ 29 Although *Semple* is not directly analogous to the instant case and the language in *Canon* is dicta, both cases are instructive. *See London v. Broderick,* 206 Ariz. 490, 495, ¶ 16, 80 P.3d 769, 774 (2003) (finding that, although a prior case differed factually from the case at bar, the reasoning of the prior case was still persuasive). Further, Appellees do not present any authority that persuasively refutes the analyses and conclusions in *Semple* or *Canon.*[11] Al-

though *Semple* only addresses administrative proceedings, we believe that arbitrations and administrative proceedings are substantially similar as both are quasi-judicial in nature and alternative forums of dispute resolution. Further, as in *Semple,* when reading § 12–341.01 in its entirety, we cannot determine that the legislature intended arbitration to be considered an action for purposes of fee awards under § 12–341.01. *See Semple,* 172 Ariz. at 611–12, 838 P.2d at 1372–73. Inferring such an intent would also seem inconsistent with the general prohibition on fee awards in arbitration absent an explicit provision in an enforceable arbitration agreement, as provided in § 12–1510. Accordingly, we are compelled to conclude that arbitration, as suggested by the court in *Canon,* is not an action allowing for recovery under § 12–341.01.

■ ¶ 30 Appellees argue that, even if it is not permissible to award attorneys' fees incurred during arbitration, a court may still award such fees when the fees are intertwined with other fees that may permissibly be recovered pursuant to § 12–341.01. *See Cottonwood,* 179 Ariz. at 195, 877 P.2d at 294 (finding that: "Even if the trial court could not award attorney's fees incurred in the arbitration proceedings, it has significant discretion to award fees in a matter intertwined with another matter for which it may not grant attorney's fees" (citation omitted)); *see also Zeagler v. Buckley,* 223 Ariz. 37, 39, ¶ 9, 219 P.3d 247, 249 (App.2009) (upholding an award of attorneys' fees incurred during a

11. Appellees cite three cases in arguing that *Semple* and *Canon* should not bar their recovery of attorneys' fees stemming from the arbitration. Appellees have misconstrued the first case, *Mathews ex rel. Mathews v. Life Care Centers of America, Inc.,* 217 Ariz. 606, 609, ¶ 9, 177 P.3d 867, 870 (App.2008), and argue that it stands for the proposition that arbitration is "a means to resolve a civil action," and therefore, arbitration is a type of action. A full reading of *Mathews,* however, reveals that the court expressly stated that arbitration is "a means to resolve a civil action *in an alternate forum* " and also proclaims that "[a]n arbitration agreement *is not a civil remedy* as defined by APSA." *Id.* (Emphases added). In fact, *Mathews* appears to lend more support to the proposition that arbitration is not an action under the meaning of § 12–341.01. The second case Appellees cite, *Yeung v. Maric,* 224

Ariz. 499, 503, ¶ 16, 232 P.3d 1281, 1285 (App. 2010), is also not helpful. The court states only that "arbitration proceedings are quasi-judicial in nature," and reaches no holding whatsoever in regards to whether arbitrations are "actions." The final case, *City of Cottonwood v. James L. Fann Contracting, Inc.,* 179 Ariz. 185, 194, 877 P.2d 284, 293 (App.1994), deals with fees awarded, not for the arbitration itself, but for the defense for an initial stay proceeding in court. *Cottonwood* is relevant, however, in that the award may have included some fees stemming from the arbitration hearing itself. *Id.; see also Canon,* 180 Ariz. at 151 n. 2, 882 P.2d at 1277 n. 2. While *Cottonwood* does not directly address the issue of whether arbitration is an action, we discuss *Cottonwood* in greater detail at ¶¶ 30–31 below.

contract dispute even though the award included fees stemming from related bankruptcy proceedings. The court stated that "when, as here, claims are so interrelated that identical or substantially overlapping discovery would occur, there is no sound reason to deny recovery of such legal fees"). We agree with Appellees' argument that, when arbitration fees are "intertwined" with fees that the prevailing party may properly recover, the appellate court should defer to court's discretion in awarding the fees. *See Zeagler*, 223 Ariz. at 40, ¶ 10, 219 P.3d at 250 (recognizing that, despite the fact that the award included fees stemming from a related bankruptcy proceeding, "[g]iven the broad discretion the trial court has to impose attorney fees and the support in the record for the fees it did award, we cannot say the court abused its discretion").

■ ¶ 31 Though we recognize that intertwined arbitration fees may be awarded pursuant to § 12–341.01 and that such awards may be upheld on appeal, it does not appear that the arbitration fees were intertwined with properly awarded fees in the instant case. In *Cottonwood*, the prevailing party requested "only those fees associated with the trial court action to defeat the stay of arbitration." *Cottonwood*, 179 Ariz. at 195, 877 P.2d at 294. In this case, however, Appellees specifically asked for, and included in their declaration, their attorneys' fees associated with the arbitration itself. Further, Appellees submitted two exhibits in support of their petition for fees. "Exhibit A" lists only the services performed in connection with the civil action—a total of $100,010.75; whereas "Exhibit B" lists only the services performed in connection with the arbitration itself—a total of $310, 325.75.[12] The record, accordingly, compels a conclusion that the fees incurred in arbitration and in the civil action were not intertwined. Appellees kept a distinct record of what fees were incurred in the arbitration, and what fees were incurred in the court action. With the supplement to its initial request for attorneys' fees, Appellees requested a total of $454,376.23 in attorneys' fees. Of that request, Appellees' own documents prove that fees totaling $310,325.75 were solely incurred via arbitration, leaving a total of only $144,050.48 in fees incurred via the court action. Because the arbitration fees and litigation fees are not intertwined, but rather, are separate and distinct, we find that the court erred and abused its discretion in awarding a total of $200,000.00 in fees—approximately $50,000.00 more than what Appellees actually incurred through the court action. We therefore vacate the award and remand the issue of attorneys' fees for reconsideration and, if warranted, a new award reflecting only the fees incurred in the court action.

¶ 32 Our holding with regards to the attorneys' fees applies narrowly and only in situations where, like the instant case: 1) neither a provision in an enforceable arbitration agreement itself, § 12–1510, nor the Federal Arbitration Act resolves the issue of attorneys' fees, and fees are only awardable pursuant to § 12–341.01; and, 2) the prevailing party has specifically requested recovery of fees incurred from arbitration and/or the requested arbitration fees are clearly not intertwined with fees which are properly recoverable.

¶ 33 Sections 12–332 and 12–341 also allow recovery of costs only for proceedings in an "action" and not for arbitration. *See* A.R.S. § 12–332 ("Costs *in the superior court* shall include") (emphasis added); A.R.S. § 12–341 ("The successful party *to a civil action* shall recover from his adversary all costs *expended or incurred therein* unless otherwise provided by law") (emphases added). For the same reasons discussed above, we also vacate the awards of taxable and non-taxable costs and remand these issues to the court to reconsider in light of this decision. Because we have vacated and remanded the entire award of attorneys' fees and costs, we need not address WB's arguments that the awarded fees and costs are unsubstantiated and/or excessive.

¶ 34 Finally, Appellees request attorneys' fees on appeal pursuant to § 12–341.01. Be-

---

12. Appellees subsequently filed a supplement and additional declaration requesting additional fees and costs associated with the pending appeal. None of these additional fees and costs were incurred during the arbitration.

**314**

cause neither party has been entirely successful on appeal, we exercise our discretion and decline to award attorneys' fees. WB has succeeded in reducing the judgment against it; accordingly, it is entitled to recover its costs on appeal pursuant to A.R.S. § 12–342(A) (2003), subject to compliance with ARCAP 21.

### CONCLUSION

¶ 35 For the reasons set forth above, we affirm the court's judgment on the merits, but vacate the award of attorneys' fees and remand that issue for redetermination.

CONCURRING: PHILIP HALL, Presiding Judge and JON W. THOMPSON, Judge.