IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SUNDEVIL POWER HOLDINGS, LLC, *Plaintiff/Appellee*,

*v.*

ARIZONA DEPARTMENT OF REVENUE, an agency of the
State of Arizona; MARICOPA COUNTY, a political subdivision of the
State of Arizona, *Defendants/Appellants*.

No. 1 CA-TX 15-0001
FILED 7-7-2016

Appeal from the Superior Court in Maricopa County
Nos.  TX2013-000006; TX2013-000530; TX2014-000484 (Consolidated)
The Honorable Christopher T. Whitten, Judge

**AFFIRMED IN PART; REVERSED IN PART**

COUNSEL

Squire Patton Boggs (US) LLP, Phoenix
By Brian M. McQuaid, Sara K. Regan, Kerryn L. Holman
*Co-Counsel for Plaintiff/Appellee*

Santos Law Office, PLLC, Phoenix
Domingos R. Santos, Jr.
*Co-Counsel for Plaintiff/Appellee*

Arizona Attorney General's Office, Phoenix
By Kenneth J. Love
*Counsel for Defendants/Appellants ADOR*

Maricopa County Attorney's Office, Phoenix
By Peter Muthig
*Counsel for Defendants/Appellants Maricopa County*

---

**OPINION**

Judge Randall M. Howe delivered the opinion of the Court, in which Presiding Judge Kent E. Cattani joined. Judge Donn Kessler specially concurred.

---

**H O W E**, Judge:

¶1 The Arizona Department of Revenue ("Department") and Maricopa County ("County") appeal the tax court's summary judgment in favor of Sundevil Power Holdings, LLC ("Taxpayer") for tax years 2013, 2014, and 2015. The Department and the County argue that the court erred in granting summary judgment because it incorrectly applied A.R.S. § 42–14156 ("valuation statute") and erred in allowing Taxpayer's 2013 amended complaint to relate back to the date of the original complaint. Because the tax court did not err in interpreting the valuation statute, but did err in allowing the Taxpayer's 2013 amended complaint to relate back, we affirm with respect to the 2014 and 2015 appeals, but reverse with respect to the 2013 appeal.

**FACTS AND PROCEDURAL HISTORY**

¶2 The Gila River Power Station ("facility") was constructed between 2001 and 2003 and consists of four identical power generation blocks. In 2005, the facility's original owners sought bankruptcy protection, and as a result, the bankruptcy court transferred the facility's ownership to Gila River Power LLC. At the time of transfer, the bankruptcy court approved a valuation for the facility based on an independent appraisal of the land on which the facility operated, the real property improvements to the facility, and the personal property in the facility. Since 2005, the Department's valuation of the facility for tax purposes has been based on the value the bankruptcy court has ascribed to the facility's real property

2

improvements and personal property, which are known as Gila River's "book costs," and the land's value as of December 31 of the preceding year.

¶3 In 2010, Gila River sold to Taxpayer one of the facility's four power blocks and a 25% interest in the facility's common generation facilities, and in 2011, it sold to Taxpayer another power block and an additional 25% interest. Thus, Gila River and Taxpayer each own 50% of the facility and common generation facilities. As part of the sale agreements, Gila River provided Taxpayer a copy of its book costs.

¶4 For tax year 2012, when Taxpayer owned a 25% interest in the facility, Taxpayer reported to the Department Gila River's book costs for purposes of valuing the property. The Department valued Taxpayer's 25% interest based on Gila River's book costs under A.R.S. § 42–14156(A)(6)(d)(i), which provides that if the buyer has the "cost information," the property's valuation should continue as if no change in ownership occurred. For tax year 2013, when Taxpayer owned a 50% interest, Taxpayer again reported Gila River's book costs to the Department. But this time, Taxpayer received tax documents with different full cash values for the facility, resulting in an approximately $1 million increase in value. Instead of valuing the facility under subsection (d)(i), the Department valued it under (d)(ii), which provides that if the buyer does not possess the cost information, the acquisition cost in an arm's length transaction should be used. A.R.S. § 42–14156(A)(6)(d)(ii).

¶5 Taxpayer contacted the Department and received updated tax documents, which reflected the higher full cash value for the facility as valued under subsection (d)(ii). The Department issued a notice of decision with the final full cash value as the higher amount for tax year 2013. Taxpayer appealed to the Board of Equalization, and the Board affirmed. Taxpayer timely appealed that determination to the tax court on January 11, 2013, naming only the Department as defendant. Four months later, the Department answered, but also moved to strike a portion of the complaint. Taxpayer responded soon after, but on May 14, the Department moved to dismiss the complaint for, as relevant, Taxpayer's failure to name and serve an indispensable party—Maricopa County, the county in which the facility was located. Taxpayer opposed the motion, arguing that the County did not need to be named a defendant to an action challenging the valuation of the facility because the tax was not yet due. Taxpayer nonetheless concurrently moved to add the County as a party pursuant to Arizona Rule of Civil Procedure 15(c).

**¶6** The Department responded that Taxpayer could not add the County because the 60-day limitations period under A.R.S. § 42–16203(C) plus 120-day service period under Arizona Rule of Civil Procedure 4(i) had elapsed. Taxpayer replied that the proposed amendment nevertheless satisfied the requirements for relation back under Rule 15(c) because within the relevant time period, the County had sufficient notice to avoid prejudice in defending the merits and knew or should have known that it would have been named a party but for Taxpayer's mistake.

**¶7** Taxpayer also argued that the Department should be estopped from asserting its argument because it had waited until the relevant time period had elapsed before filing its motion to dismiss. The Department had sought several extensions to file its answer, had filed numerous papers with the court, and had conversations with opposing counsel, but then waited until the time period expired before asserting that the County was a necessary party. Taxpayer further alleged that had the Department complied with Arizona Rule of Civil Procedure 12(b) to timely disclose its defenses, Taxpayer would have promptly added and served the County within the relevant time period. After oral argument, the tax court withheld ruling on the pending motions and allowed Taxpayer to conduct discovery on whether the County had notice.

**¶8** While the tax year 2013 appeal was pending, Taxpayer appealed its tax year 2014 full cash value directly to the tax court in October 2013. This appeal named both the Department and the County as defendants. Taxpayer then moved to consolidate the appeals over the Department and the County's objection, but the tax court denied the motion. The parties subsequently moved and cross-moved for partial summary judgment and summary judgment on whether the Department correctly applied A.R.S. § 42–14156 to Taxpayer's facility for tax years 2013 and 2014.

**¶9** Meanwhile, after discovery for the tax year 2013 appeal had concluded, the tax court granted Taxpayer's motion to amend the tax year 2013 complaint. The court ruled that the County had received notice sufficient to satisfy Rule 15(c). The court also concluded that neither the Department nor the County suffered prejudice by allowing relation back, but urged counsel "to make sure taxing jurisdictions are properly named in any action for a refund." Taxpayer filed and served an amended complaint to the County. The County then unsuccessfully moved to dismiss for lack of subject matter jurisdiction and failure to name and serve an indispensable party.

¶10        After briefing and oral argument on the summary judgment motions, the tax court granted Taxpayer's motion for summary judgment and denied the Department's cross-motion for summary judgment. The court concluded that the Department should have valued Taxpayer's facility under subsection (d)(i), not (d)(ii). The court found that because Taxpayer "'acquired' the facility 'from another taxpayer' and that [it] 'ha[d] possession of the cost information'—in this case the cost of Gila River Power Station's 'acquiring the property in an arm's length transaction'—the valuation [wa]s controlled by [subsection (d)(i)]." The court also found that although the information Taxpayer received when it acquired the facility did not contain the details that the original owners might presumably have possessed, it was still "cost information" as used in subsection (d).

¶11        Taxpayer then appealed its tax year 2015 full cash value directly to the tax court, naming both the Department and the County as defendants. After receiving the court's ruling for the tax year 2013 appeal, the parties agreed to consolidate the appeals for tax years 2013, 2014, and 2015. The court subsequently issued a judgment—with language reserving the Department and the County's rights to pursue an appeal—and then an amended judgment awarding attorneys' fees and costs to Taxpayer. The Department and the County appealed the amended judgment. After the tax court entered the final judgment with Arizona Rule of Civil Procedure 54(c) finality language, the appeal proceeded.

## DISCUSSION

### 1. The Valuation Statute

¶12        The Department argues that the tax court incorrectly applied the substantive law to the undisputed facts by interpreting the cost of acquiring a facility in an arm's length transaction as "cost information" in A.R.S. § 42–14156. Summary judgment may be granted when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c)(1). When the material facts are undisputed, our role is to determine whether the tax court correctly applied the substantive law to those facts. *Duke Energy Arlington Valley, LLC v. Ariz. Dep't of Revenue*, 219 Ariz. 76, 77 ¶ 4, 193 P.3d 330, 331 (App. 2008). We review de novo the tax court's grant of summary judgment. *Scottsdale/101 Assocs., LLC v. Maricopa County*, 238 Ariz. 291, 292 ¶ 7, 359 P.3d 1035, 1036 (App. 2015). We likewise review de novo the tax court's construction of applicable statutes. *See Chevron U.S.A. v. Ariz. Dep't of Revenue*, 238 Ariz. 519, 520 ¶ 6, 363 P.3d 136, 137 (App. 2015).

¶13　　　　The primary goal in statutory interpretation is to effectuate the Legislature's intent, *General Motors Corp. v. Maricopa County*, 237 Ariz. 337, 339 ¶ 8, 350 P.3d 841, 843 (App. 2015), with the statute's plain language as the most reliable indicator of its meaning, *Sempre Ltd. P'ship v. Maricopa County*, 225 Ariz. 106, 108 ¶ 5, 235 P.3d 259, 261 (App. 2010). We consider the statute as a whole, including its context within a broader statutory scheme. *General Motors*, 237 Ariz. at 339 ¶ 8, 350 P.3d at 843. A statute "is to be given such an effect that no clause, sentence or word is rendered superfluous, void, or contradictory or insignificant." *Guzman v. Guzman*, 175 Ariz. 183, 187, 854 P.2d 1169, 1173 (App. 1993). We generally "liberally construe statutes imposing taxes in favor of taxpayers." *CCI Europe, Inc. v. Ariz. Dep't of Revenue*, 237 Ariz. 50, 52 ¶ 8, 344 P.3d 352, 354 (App. 2015). As discussed below, because the tax court correctly applied the substantive law to the facts, Taxpayer was entitled to judgment as a matter of law on the 2014 and 2015 appeals. Accordingly, the tax court did not err in granting summary judgment in Taxpayer's favor and denying summary judgment to the Department and the County for the 2014 and 2015 appeals.

¶14　　　　In Arizona, an "electric generation facility" is "all land, buildings and personal property that is situated in this state and that is used or useful for the generation of electric power." A.R.S. § 42–14156(B)(1). The valuation of these facilities is the sum of the values of (1) the land used in operating the facility, (2) the real property improvements to the facility, and (3) the personal property in the facility. A.R.S. § 42–14156(A)(1)–(3). Specifically, the value of land is "the cost to the current owner as of December 31 of the preceding calendar year"; the value of real property improvements is "the cost multiplied by valuation factors prescribed by tables adopted by the department"; and the value of personal property is "the cost multiplied by the valuation factors as prescribed by the department" with adjustment for the assessment year. A.R.S. § 42–14156(A)(1)–(3). For purposes of valuation, the statute lists the following methods for determining cost:

> (a) "Cost" means the cost of constructing the property or acquiring the property in an arm's length transaction.
>
> (b) The cost of personal property is the invoice cost of the personal property, the cost of transporting the property to the facility site and the cost of labor to install the property, plus any transaction privilege or use taxes paid.
>
> . . . .

6

(d) In the case of a facility that is acquired from another taxpayer:

> (i) If, after the acquisition, the buyer has possession of the cost information, the valuation of the facility shall continue based on the seller's cost as if there were no change in ownership, except for land as provided in subsection A, paragraph 1.

> (ii) If, after the acquisition, the buyer does not possess the cost information, the acquisition cost in an arm's length transaction shall be used.

A.R.S. § 42–14156(A)(6)(a)–(d).

¶15      The Department argues that "cost information" as used in subsection (d) refers to the property's *original* cost information and because Taxpayer does not possess that information, the appropriate starting point for valuing the facility is the cost of the arm's length transaction between Taxpayer and Gila River. But our reading of the statute's plain language is that "cost information" refers to the seller's cost of constructing the property or acquiring it in an arm's length transaction. Accordingly, because Taxpayer possesses information showing Gila River's cost of acquiring the properties in an arm's length transaction from the original owners, the Department should have valued Taxpayer's interest in the facility using subsection (d)(i), not (d)(ii).

¶16      The valuation statute expressly defines "cost" in subsection (a). Consequently, the "cost information" in subsection (d) refers to the information regarding either the cost of constructing the property or acquiring that property in an arm's length transaction. Further, because subsection (d) expressly refers to the "seller's cost" in stating that the "valuation of the facility shall continue based on the seller's cost as if there were no change in ownership," the "cost information" as used in subsection (d) reasonably means the *seller's cost information*. Thus, in future transactions, if the buyer possesses the seller's cost information for a property, which is either the seller's cost of constructing the property or the seller's cost of acquiring the property in an arm's length transaction from the previous seller, then the Department will value the facility "based on the seller's cost as if there were no change in ownership, except for land as provided in subsection A, paragraph 1." A.R.S. § 42–14156(A)(6)(d)(ii).

¶17      In the present case, Gila River acquired the facility during the original owners' bankruptcy proceedings. The bankruptcy court found Gila

River's acquisition cost to be the total value of the land on which the facility operated, real property improvements to the facility, and personal property in the facility—amounts that were determined after an independent appraisal. Gila River then submitted its acquisition cost information to the Department for valuing the facility for tax purposes, and the Department accepted that information. Gila River then sold two power blocks and a 50% interest in the common generation facilities to Taxpayer. As part of the sale agreements, Gila River, another taxpayer, gave Taxpayer its book costs, which were its acquisition costs, consisting of the values of Gila River's acquisition of the land, real property improvements, and personal property in an arm's length transaction with the original owners. These are the same values Gila River submits to the Department to value the other 50% of the facility and which the Department uses for valuation purposes under subsection (d)(i). Because Taxpayer has the "seller's cost information," that is, Gila River's cost of acquiring the real property improvements and personal property in an arm's length transaction, the facility's valuation for those properties should have been based on Gila River's cost as if no change in ownership occurred, except for the land.

¶18 The Department counters that Taxpayer must possess the "original construction cost" for the real property improvements and personal property for the Department to value the facility under subsection (d)(i). At oral argument, the Department defined "original construction cost" as the "cost of the party first putting the property into service." It reached this conclusion by examining a "number of factors," including the definition of cost for personal property, which it argued "clearly speak to the origination, installation, transaction, privilege tax" and "define costs in the lenses . . . of origination." Under the Department's argument, because Taxpayer did not possess the original cost information, the starting point for the valuation is the cost in an arm's length transaction between Taxpayer and Gila River.

¶19 But the Department's interpretation inserts into the statute a restriction that its plain language does not provide. The statute's definition of "cost" states that it is either "the cost of constructing the property *or* acquiring the property in an arm's length transaction." A.R.S. § 42–14156(A)(6)(a) (emphasis added). Nowhere in the language of the statute does it limit the "cost information" to the "party first putting the property into service." If the Legislature had wanted to limit "cost" to the original construction cost, it was more than able to do so, *see Powers v. Carpenter*, 203 Ariz. 116, 118 ¶ 11, 51 P.3d 338, 340 (2002) (stating that if the Legislature had intended a statute to encompass more than indicated in plain language, the Legislature could have done so), like it did in A.R.S.

§ 42–14158. That statute's language states that "[t]o achieve equity in the full cash values of existing and new generation facilities, the department shall compute adjusted original cost for existing generation facilities in lieu of actual cost for use in determining the full cash values in accordance with § 42–14156." A.R.S. § 42–14158. Consequently, because "cost information" for the purposes of subsection (d) refers to the seller's cost information regarding the construction cost *or* the cost of acquiring the property in an arm's length transaction from the previous seller and because Taxpayer possessed this information, the Department should have valued the facility under subsection (d)(i). Accordingly, the tax court properly granted summary judgment in Taxpayer's favor and denied summary judgment to the Department and the County for the 2014 and 2015 appeals.

## 2. Relation Back Under Rule 15(c)

**¶20**        The Department and the County next argue that the tax court erred in permitting Taxpayer's amended complaint for tax year 2013 to relate back under Arizona Rule of Civil Procedure 15(c). We review de novo the interpretation and application of a rule of procedure. *Pargman v. Vickers*, 208 Ariz. 573, 576 ¶ 22, 96 P.3d 571, 578 (App. 2004). Because Taxpayer did not make "a mistake concerning the identity of the proper party" as Rule 15(c) requires for relation back, the tax court erred in permitting Taxpayer's 2013 amended complaint to relate back.

**¶21**        Arizona Rule of Civil Procedure 15(c) allows an amendment to relate back to the date of the original pleading if the claim asserted in the amendment "arose out of the [same] conduct, transaction, or occurrence." The relation back doctrine of Rule 15(c), like the federal rule upon which it is modeled, balances a plaintiff's right to a decision on the merits "despite procedural or technical difficulties with a defendant's right to be protected from stale claims and the attendant uncertainty they cause." *Pargman*, 208 Ariz. at 576 ¶ 23, 96 P.3d at 578; *see also Waltner v. JPMorgan Chase Bank, N.A.*, 231 Ariz. 484, 488 ¶ 18, 297 P.3d 176, 180 (App. 2013) ("Federal cases interpreting federal rules of civil procedure that are similar to our rules are instructive and persuasive in construing our rules, and we subscribe to the principle that uniformity in interpretation of our rules and the federal rules is highly desirable."). Rule 15(c) therefore ameliorates the effect of the limitations period when three conditions exist: (1) the claim in the amended pleading arose out of the conduct, transaction, or occurrence alleged in the original complaint; (2) within the specified time period, the prospective defendant received notice of the action such that the party will not be prejudiced in maintaining a defense on the merits; and (3) during the same period, the prospective defendant either knew or should have known that,

but for a mistake concerning the proper party's identity, the prospective defendant would have been named in the original complaint. Ariz. R. Civ. P. 15(c). Contrary to Taxpayer's contention during oral argument before this Court, all three elements are necessary for an amended complaint to relate back to the date of the original complaint. *See Tyman v. Hintz Concrete, Inc.*, 214 Ariz. 73, 74–75 ¶¶ 8–12, 148 P.3d 1146, 1147–48 (2006); *see also Levinson v. Jarrett ex rel. Cty. of Maricopa*, 207 Ariz. 472, 473 ¶ 1, 88 P.3d 186, 187 (App. 2004); *Pargman*, 208 Ariz. at 581 ¶ 40, 96 P.3d at 579. The plaintiff bears the burden of establishing the requisite mistake. *Tyman*, 214 Ariz. at 77 ¶ 22, 148 P.3d at 1150.

**¶22**        We may decide this issue on the narrow question whether Taxpayer made a "mistake concerning the identity of the proper party" to satisfy the third element for Rule 15(c) relation back. Accordingly, we first address the Department and the County's argument that Taxpayer's "mistake" of not naming the County as a party was a mistake of law and therefore not a "mistake" as Rule 15(c) requires for relation back. A mistake is "a wrong action or statement proceeding from faulty judgment, inadequate knowledge, or inattention." *Tyman*, 214 Ariz. at 76 ¶ 19, 148 P.3d at 1149; *see also Krupski v. Costa Crociere, S. p. A.*, 560 U.S. 538, 548–49 (2010) (providing that a mistake is "an error, misconception, or misunderstanding; an erroneous belief"). The United States Supreme Court has provided the following example in explaining when a "mistake concerning the proper party's identity" has occurred:

> A plaintiff may know that a prospective defendant—call him party A—exists, while erroneously believing him to have the status of party B. Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the "conduct, transaction, or occurrence" giving rise to her claim. If the plaintiff sues party B instead of party A under these circumstances, she has made a "mistake concerning the proper party's identity" notwithstanding her knowledge of the existence of both parties.

*Id.* at 548. Thus, a plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue. *Id.* at 549. The plaintiff may mistakenly choose to sue a different defendant based on that misimpression, but that "kind of deliberate choice does not foreclose a finding that [Rule 15] has been satisfied." *Id.*

¶23　　　　Accordingly, because Rule 15(c) requires a mistaken identification of defendants, the rule does not cover "making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties[, which] is the antithesis of making a mistake concerning the proper party's identity." *Id.*; *see also Tyman*, 214 Ariz. at 76 ¶ 21, 148 P.3d at 1149 (providing that the rule does not cover a "deliberate decision not to sue a party whose identity the plaintiff knew from the outset"). Similarly, the rule does not cover a mistake "by counsel regarding whom to name in a lawsuit," which is "[w]here a plaintiff knows of the existence and identity of a defendant before the statute of limitations runs, and makes a conscious election about whom to sue, . . . plaintiff's deliberate, though ultimately erroneous or unwise, tactical choice cannot be considered a 'mistake'. . . ." *O'Keefe v. Grenke*, 170 Ariz. 460, 465–66, 825 P.2d 985, 990–91 (App. 1992). This is because, in such situations, the plaintiff did not take a wrong action from "faulty judgment, inadequate knowledge, or inattention"; rather, the plaintiff believed that the original defendant was not liable and was simply unaware of who was. *See Tyman*, 214 Ariz. at 76–77 ¶¶ 19, 23, 148 P.3d at 1149–50. Consequently, we "must determine, through reference to the original complaint, analysis of affidavits or other evidence submitted by the parties, and by applying common sense, whether the new defendant truly was omitted because of a 'mistake concerning the identity of the proper party.'" *Id.* at ¶ 22 (citation omitted).

¶24　　　　Here, although we share the tax court's concern regarding the timing of the Department's motion to dismiss, Taxpayer did not make "a mistake concerning the identity of the proper party" as Rule 15(c)(2) contemplates for relation back. Taxpayer had no misunderstanding, misimpression, or erroneous belief about the County's status or role in centrally-valued property tax appeals versus the Department's status or role in such appeals; Taxpayer merely made a mistake regarding whom to name in the lawsuit. The record shows that Taxpayer knew of the County's role in centrally-valued property tax appeals before the relevant time period ended, but did not name the County as a defendant. Indeed, this does not "preclude [Taxpayer] from making a mistake with respect to the party's identity." *Krupski*, 560 U.S. at 549. Instead, what forecloses Rule 15(c)'s ability to ameliorate the effect of the limitations period in this case was Taxpayer's deliberate choice to sue the Department instead of the County while "fully understanding the factual and legal differences between the parties." *Id.* This is the "antithesis of making a mistake concerning the proper party's identity." *Id.*

¶25 The original complaint, affidavits, other evidence, and common sense, *Tyman*, 214 Ariz. at 76–77 ¶ 22, 148 P.3d at 1149–50, establish that Taxpayer knew of the factual and legal differences between the Department and the County. Notably, Taxpayer avowed that "[b]ecause the Department was the entity that made the valuation determination, Maricopa County . . . was not involved in any stage of the valuation process or appeal." Consistent with this position, Taxpayer distinguished the Department from the County on two other occasions in explaining why the County was not a necessary party. In both its response to the Department's motion to dismiss and its reply in support of its motion for leave to amend the complaint, Taxpayer argued that because it "has not yet paid the taxes contemplated by the Department's valuation and thus [Taxpayer] does not presently seek a refund from Maricopa County," the County was not a necessary party.[1]

¶26 More importantly, nothing in the record indicates that Taxpayer had any faulty judgment, inadequate knowledge, or inattention causing it to mistakenly identify the Department's status for that of the County or that Taxpayer knew generally what the Department did while misunderstanding the roles the Department and the County played in the transaction giving rise to Taxpayer's claim. On the contrary, the record shows that Taxpayer knew full well the distinction between the Department—the entity that values its facility for taxing purposes—and the County—the entity that collects the tax and the entity from which Taxpayer would, if it had paid the tax, seek the refund.

¶27 Taxpayer countered at oral argument that Rule 15(c) means "as long as there is a mistake in suing the proper party" then a mistake has been made. But this argument fails for two reasons. First, the language of the rule does not refer merely to a general "mistake," but a specific mistake "concerning the identity of the proper party." Ariz. R. Civ. P. 15(c). Reading the rule as Taxpayer posits would render parts of the rule's language superfluous. *See City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 183 ¶ 33, 181 P.3d 219, 230 (App. 2008) ("We avoid an interpretation that makes 'any language superfluous or redundant.'"). Second, the United States Supreme Court and Arizona courts on numerous occasions have

_____

[1] Taxpayer contended at oral argument that this position was merely "an argument [it] made to the court below to save [itself]" and that this Court should disregard that position. But our review of issues presented on appeal requires us to examine and accept the accuracy of the record as established by counsel during the trial court proceedings. *See Tyman*, 214 Ariz. at 76–77 ¶ 22, 148 P.3d at 1149–50.

elucidated the meaning of a mistake regarding the identity of the proper party. *See, e.g.*, *Krupski*, 560 U.S. at 548–52; *Tyman*, 214 Ariz. at 76–77 ¶¶ 19–23, 148 P.3d at 1149–50; *O'Keefe*, 170 Ariz. at 465–66, 825 P.2d at 990–91. If that concept was as simple as Taxpayer posits, the courts' analysis in those cases would have been unnecessary.

**¶28**        Taxpayer also counters that had the Department raised the issue of the County's being a necessary party to the appeal earlier, Taxpayer would have "immediately sought to amend the Complaint to add the County as a party." We reject Taxpayer's position because it imposes on the Department a responsibility found neither in case law or statute and for which Taxpayer has provided no legal foundation. Instead, A.R.S. § 42–16208(A)(1) provides that "*the appellant shall name as defendants . . .* [i]n an appeal by the taxpayer involving property that is valued by the department, both the department and . . . *the county* in which the property is located." (Emphases added.) Accordingly, the statute's plain language provides that Taxpayer, as the appellant, had to name both the Department and the County in its appeal.

**¶29**        Taxpayer further counters that because of the statutory requirement that counties in which facilities are located be named as defendants in tax appeals, the County knew or should have known that it would have been named, but for a mistake, as opposed to a deliberate, tactical choice on Taxpayer's part. But we need not examine whether the County knew or should have known that it would have been named a party but for Taxpayer's mistake, or the other elements for relation back under Rule 15(c) for that matter, because Taxpayer has not met its burden of establishing that it made a "mistake concerning the identity of the proper party." *See* Ariz. R. Civ. P. 15(c). Consequently, Rule 15(c)'s requirements cannot be satisfied here when "the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision." *Krupski*, 560 U.S. at 552. Accordingly, the tax court erred in allowing Taxpayer's amended complaint for tax year 2013 to relate back to the date of the original complaint.

### 3. Attorneys' Fees and Costs on Appeal

**¶30**        Taxpayer requests attorneys' fees and costs incurred on appeal pursuant to A.R.S. § 12–348(B)(1) and upon compliance with Arizona Rule of Civil Appellate Procedure 21. Because Taxpayer is the prevailing party in the tax year 2014 and 2015 appeals, we grant its request with regards to those appeals upon compliance with Rule 21.

**CONCLUSION**

¶31 For the foregoing reasons, we affirm with respect to the 2014 and 2015 appeals, but reverse with respect to the 2013 appeal.

**K E S S L E R**, Judge, specially concurring:

¶32 I concur with the reasoning and result reached by the majority on its interpretation of A.R.S. § 42–14156 (Supp. 2015). I write separately on the relation back of the amendment to the complaint in the 2013 appeal. We are bound by our supreme court's decision in *Tyman v. Hintz Concrete, Inc.*, 214 Ariz. 73 (2006), that a legal mistake in naming a party is insufficient to have an amended complaint relate back. However, in *Krupski v. Costa Corciere, S.p.A.*, 560 U.S. 538 (2010), the United States Supreme Court changed the focus of mistake from what the plaintiff knew or should have known to what the defendant to be added knew or should have known. Given this change, our supreme court should re-examine the test for mistake under Arizona Rule of Civil Procedure ("Rule") 15, and, if it adopts the *Krupski* analysis, I would affirm the tax court's decision on relation back because all three elements for relation back would have been met.

¶33 For an amendment to a complaint adding a new party to relate back to the filing of the original complaint, a plaintiff must show three elements: (1) that the claim in the two pleadings arose out of the same conduct, transaction, or occurrence; (2) that the party to be added had sufficient knowledge of the complaint so that it would not be prejudiced in defending its interest; and (3) that the "mistake concerning the identity of the proper party" was sufficient. *Tyman*, 214 Ariz. at 74-77, ¶¶ 9, 19-21. The first element is not in dispute in this case. Because the majority properly focuses on the third element, the sufficiency of the mistake, I first turn to that to show how *Krupski* would have the amended complaint relate back. Then, I turn to the notice requirement under the identity of interest test.

### 1. Mistake

¶34 In *Tyman*, our supreme court held that under Rule 15(c), the key issue on mistake is what the plaintiff knew at the time of the original pleading and that a mistake of law in not naming a party is insufficient for Rule 15(c) purposes. 214 Ariz. at 76, ¶¶ 19-21. In doing so, the court relied primarily on federal cases interpreting Federal Rule of Civil Procedure ("Federal Rule") 15(c). *Id.* This focus changed, however, when the United

14

States Supreme Court modified the analysis to be used under Federal Rule 15(c) in *Krupski*. In *Krupski*, the Supreme Court held that rather than looking at what the plaintiff knew, the focus should be on whether the defendant to be added could have concluded that the plaintiff had made a deliberate choice not to sue that defendant and could obtain relief from another defendant. 560 U.S. at 548.

¶**35**        Krupski was injured while on a cruise and wanted to submit a claim for the injury. *Id.* at 541-42. Her ticket indicated that all claims had to be submitted to the carrier, Costa Corciere S.p.A. ("Corciere"), or its duly authorized agent. *Id.* at 542. However, Krupski filed her claim with Costa Cruise Lines N.V. ("Cruise"), which her ticket indicated was the sales and marketing agent for Corciere. *Id.* at 542-43. Cruise requested additional information and when a settlement could not be reached, Krupski timely filed a complaint against Cruise. *Id.* at 543. After the time had expired to file a complaint against Corciere, Cruise alerted Krupski of Corciere's existence, indicating Krupski had sued the wrong entity. *Id.* Cruise then moved for summary judgment arguing Corciere was the proper defendant. *Id.* at 544. Krupski successfully moved to amend to add Corciere, and the court denied the motion for summary judgment without prejudice. *Id.* Corciere, now served, moved to dismiss the complaint, contending that the amended complaint did not relate back to the original complaint under Federal Rule 15(c) and therefore was time-barred. *Id.* at 544-45. The district court granted the motion to dismiss and the Court of Appeals affirmed. *Id.* at 545-46.

¶**36**        The Supreme Court reversed. *Id.* at 546. It explained that the Court of Appeals had erred when it relied on whether Krupski either knew or should have known of the proper party's identity and thus determined that she made a deliberate choice instead of a mistake in not naming Corciere as a party in the original complaint. *Id.* at 548. Rather, as the Court put it, the question under Federal Rule 15(c)(1)(C), which is identical to our corresponding rule, is "not whether [the plaintiff] knew or should have known the identity of [] Corciere as the proper defendant, but whether [] Corciere knew or should have known that it would have been named as a defendant but for an error." *Id.* This is because the rule asks "what the prospective *defendant* knew or should have known during the [period required to serve], not what the *plaintiff* knew or should have known at the time of filing her original complaint." *Id.* As such, *Krupski* changes the focus relied on in *Tyman* that the key to mistake is what the plaintiff knew about the parties to be sued at the time of the original complaint. *Tyman*, 214 Ariz. at 76, ¶ 19.

¶37        In so holding, the Court in *Krupski* did not rule out the need for a mistake. As the Court explained, the information available to the plaintiff is relevant only if it "bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." *Krupski*, 560 U.S. at 548. The Court explained that a mistake means an error, misconception, or misunderstanding, noting that a plaintiff's knowledge "of a party's existence does not preclude her from making a mistake with respect to that party's identity." *Id.* at 549. While the Court agreed with Corciere that a deliberate choice to sue one party instead of another with full understanding of the differences between the parties is not a mistake concerning party identity, it disagreed that any time a plaintiff is aware of two parties and chooses to sue the wrong one, the proper defendant could reasonably believe there was no mistake and that the plaintiff simply chose not to sue it. *Id.* Rather, the court stated:

> The reasonableness of the mistake is not itself at issue. . . . [A] plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status . . . and she may mistakenly choose to sue a different defendant based on that misimpression. *That kind of deliberate but mistaken choice does not foreclose a finding that [Federal] Rule 15(c)(1)(C)(ii) has been satisfied.*

*Id*. at 549 (emphasis supplied).

¶38        Most importantly in this new analysis, the Court explained both the public policy and the history behind the relation back rule. The rule balances the interests of a defendant protected by a statute of limitations with the policy preference to decide cases on the merits. *Id.* at 550. A prospective defendant who "legitimately believed that the limitations period had passed . . . has a strong interest in repose," but repose "would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity." *Id*.

¶39        To drive this point home, the Court next explained the legislative history of the relation back rule. Prior to 1966, there had been a recurring problem with lawsuits challenging the administrative denial of Social Security benefits. *Id.*; *see also* Fed. R. Civ. P. 15(c) advisory committee's note to 1966 amendment. The pertinent statute required the

claimant to name the Secretary of what was then the Department of Health, Education, and Welfare. *Krupski*, 560 U.S. at 550. Claimants often sued the United States, the Department itself, or a nonexistent "Federal Security Administration," only to discover their mistake after the limitations period had expired. *Id.* The district courts denied claimants' motions to amend because the amended complaints would not relate back. *Id.* As the Court explained, the 1966 amendment to Federal Rule 15(c) was intended to solve this problem, so that claimants could qualify their mistakes under the rule regardless of the fact that they reasonably should have known the identity of the proper defendant. *Id.* at 550-51.

**¶40**        *Krupski* makes a fundamental shift in analysis from cases like *Tyman*, which look solely to the plaintiff's understanding of the identity of the parties. Under the *Tyman* analysis, for example, a suit brought by an unsuccessful claimant for Social Security benefits naming the wrong defendant would not relate back because the plaintiff knew or should have known what the law required in naming the proper defendant. Under the *Krupski* analysis, the nature of the mistake, whether it be factual or legal, only affects whether the proper defendant would or should have known that the plaintiff deliberately chose not to sue it so it could rely on repose, rather than merely obtaining a windfall because of the plaintiff's error of who it had to sue. Under *Tyman*, Sundevil Power Holdings, LLC's ("Sundevil") legal error did not qualify as a factual mistake for purposes of relation back. Under *Krupski,* however, the error would suffice as a mistake for relation back purposes because, given the nature of the complaint, Maricopa County ("County"), if it was aware of the suit, would have known that Sundevil had not deliberately chosen not to sue the County.

**¶41**        When Sundevil filed its complaint, it had not yet paid the tax so it only named the Arizona Department of Revenue ("Department") in its complaint, thinking that if the assessment was changed it would not have to pay the tax. Accordingly, it asked that the Department pay Sundevil an amount equal to the amount of any excess taxes levied and assessed against it based on the Department's incorrect valuation of the property. However, A.R.S. § 42–16208(A)(1) (2006) provides that if Sundevil's property was valued by the Department, it had to name the Department and either the State or the County, whichever collects the tax.

**¶42**        Sundevil's decision was less egregious than those of Social Security claimants desiring to appeal the denial of their claims who could have read the statute to determine the proper defendant and thus "reasonably should have known" who to name prior to the limitations period running. If the County knew that Sundevil had filed the 2013

appeal, it would have known that Sundevil was filing the appeal so Sundevil would not have to pay what we have determined to be the erroneous tax. In such circumstances, the County could not have assumed that Sundevil was only seeking to prove the Department was wrong on the valuation and that Sundevil would not want a refund on any erroneous tax paid. After all, Sundevil was not appealing the assessment of its property purely for the principle of proving the Department erred; Sundevil did not want to be liable for what we have determined was the erroneous tax amount.

¶43 Indeed, the only error here in naming parties related to when the County had to be added to the complaint. When the Department moved to dismiss the complaint because the County was not named, Sundevil argued that the County did not have to be named until the tax was assessed and sought a refund. In doing so, Sundevil indicated that it had proposed to the Department that they stipulate to amend the complaint to add the County, but the Department had refused.

¶44 Accordingly, under *Krupski*, the County could not have "legitimately believed that the limitations period had passed" so as to have "a strong interest in repose." *See* 560 U.S. at 550. Rather, repose here would be a "windfall for [the County] who understood, or who should have understood, that [it] escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about [its] identity." *Id.*

### 2. Notice

¶45 If *Krupski* applies for relation back purposes, we must next turn to the second element under Rule 15: whether the County, as the defendant to be added, had sufficient notice of the 2013 appeal so that it would not be prejudiced in maintaining a defense on the merits. *Tyman*, 214 Ariz. at 74-75, ¶ 9 (quoting Rule 15(c)). In other words, did the County know, or should it have known, that Sundevil was going to try to get a refund if it paid the tax and thus would be adding the County. I conclude that notice was sufficient here under the identity of interest test.

¶46 Absent actual notice of the complaint, notice can be sufficient when the named defendant and the party the plaintiff seeks to add have an identity of interest. 6A Charles Alan Wright et al., *Federal Practice & Procedure* § 1499 (3d ed. & Supp. 2016). "Identity of interest generally means the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Id.* The objective of this test is avoiding

the application of the limitations period when no prejudice will result to the party to be added. *Id.* An identity of interest usually exists if there is a nexus between the old and new parties as to the subject of the litigation and they have analogous positions in the litigation. *Farmer v. State*, 788 P.2d 43, 49-50 (Alaska 1990) (citing 3 J. Moore, *Moore's Federal Practice* § 15.15[4.-1] at 15-160 n.12 (2d ed. 1985)); *see also Pargman v. Vickers,* 208 Ariz. 573, 579, ¶ 30 (App. 2004) (discussing the identity of interest test and noting that under Wright et al., *supra*, the relationship "needed to establish identity of interest for notice and knowledge . . . varies depending on the underlying facts").

**¶47** The record is unclear whether the Department communicated with the County about the 2013 appeal before the sixty-day statute of limitations had run to add the County. During supplemental discovery, Sundevil pointed out that it had undertaken discovery about such communications but the County had automatically deleted its emails after thirty days, and by the time the County had conducted the searches in August 2013, emails from January through May 2013 may have been destroyed. In addition, the Department had conceded that someone at the Department may have communicated with the County about the complaint.

**¶48** I assume for purpose of this record that there was no formal communication from the Department to the County about the 2013 appeal before the time to name the County had run. Despite the lack of actual notice, the County knew of the 2013 appeal under the identity of interest test. *See Carlson v. Hennepin County*, 479 N.W.2d 50, 56 (Minn. 1992) (under the identity of interest test, notice to one is notice to all); *see also Williams v. Ward*, 553 F. Supp. 1024, 1026 (W.D.N.Y. 1983) (constructive notice is sufficient under the identity of interest test if the person is aware of the complaint and that the party may have a claim made against it).

**¶49** No Arizona case is sufficiently on point to conclude that notice of the appeal to the Department amounted to notice to the County when there is no evidence the County actually knew about the suit before

the statute had run.[2]   Turning to other jurisdictions for guidance, the principle at play is whether the Department and the County had similar interests so that knowledge of one can be imputed to the other and the County would suffer no prejudice in defending its interests.  Wright et al., *supra* ¶ 45.  Most helpful is *Wong v. Calvin*, 87 F.R.D. 145 (N.D. Fla. 1980).  Wong had brought an EEOC claim against the Florida Department of Highway Safety and Motor Vehicles based on his discharge by the Director,

---

[2] Thus, in *Pargman*, we held that the decedent's estate had sufficient imputed notice and knowledge of the complaint against the decedent under the identity of interest test even though the personal representative had not been named until after the time for filing and service had run.  208 Ariz. at 578-79, ¶ 28.  We reasoned that the real party in interest in those types of cases was the decedent's liability insurer, so we would look to see if the insurer had notice and knowledge.  *Id.* at 580, ¶ 35.

In *Ellman Land Corporation v. Maricopa County*, the taxpayer had named and served the State and Department of Revenue, but not Maricopa County in challenging the county assessor's valuation of its property.  180 Ariz. 331, 333 (App. 1994).  Rather, it named the county assessor and served one of the assessor's employees.  *Id.*  When the county later moved to dismiss saying it was a necessary party, the taxpayer argued that the State was the only necessary party, but alternatively, it should be allowed to amend to add the county beyond the statutory time period.  *Id.* at 334.  Ultimately, the tax court held the county was a necessary party, but it allowed an amendment to name the county that related back to the original complaint.  *Id.* at 335.  On appeal, we affirmed and held that while informal notice might not be sufficient, the county and its assessor had such an identity of interest that the county could be deemed to have notice of the suit and that it would have to defend the action.  *Id.* at 338.  Here, however, Sundevil did not name or serve anyone at the county in the original complaint so *Ellman* is not controlling.  *See also Pesqueira v. Pima Cty. Assessor*, 133 Ariz. 255, 257 (App. 1982) (holding that notice was sufficient for relation back purposes when the taxpayer named the Arizona Board of Tax Appeals instead of the Department of Revenue, but served the Attorney General, who would have been the proper recipient of service if the Department of Revenue had been named since Rule 15(c) provided that notice would be sufficient if the service of process was on the correct governmental official).

Nor is *Ritchie v. Grand Canyon Scenic Rides*, 165 Ariz. 460 (1990), controlling because that case did not address any identity of interest to provide notice.

Calvin. *Id.* at 147. Although Wong did not name Calvin before the EEOC, the court found that Calvin had substantial identity with the department to hold that Calvin had been identified, especially because Calvin could not show any prejudice. *Id.* at 148-49. When Wong brought his court complaint, he again did not name Calvin, but did name Jones, who was head of the relevant bureau under Calvin. *Id.* at 149. Wong later moved to amend to add Calvin, which Jones opposed. *Id.* at 150. Later, both Calvin and Jones moved to dismiss based on the statute of limitations, and the issue became whether the amended complaint related back to the original complaint against Jones. *Id.* at 149. The court held the amended complaint related back because (1) there was no prejudice to Calvin other than having to defend a suit he hoped was time-barred; and (2) Calvin and Jones had an identity of interests because they were represented by the same assistant attorney general, the factual basis of the claim was the same, and the defendants had behaved as one set of interests during litigation.[3] As the court put it, the defendants "apparently [did] not themselves consider their interests different. Identity of interests and virtually complete communication and mutual support could hardly be more strongly shown." *Id.* at 150; *see also Williams*, 553 F. Supp. at 1026 (stating identity of interest test was met when parties were represented by the same attorney); *Farmer*, 788 P.2d at 49-50 (same).

¶50 Applying these principles, the County had adequate notice of the 2013 appeal under the identity of interest test. Although the Department's attorney never made a formal appearance for the County, all other interests of the two are the same, and both the Department and the County made the same arguments on the merits and in opposing the amendment to add the County: the Department to argue that a necessary party was missing, and the County to avoid having a refund ordered. The Department's attorney filed and signed the pleadings for *both* the County and the Department on the various motions for summary judgment in the 2014 appeal. The Department opposed the motion to amend, trying to protect the County's interests as well as its own in getting the 2013 appeal dismissed, although it argued the Department and the County did not share a "financial identity of interest." Once the court granted the motion to amend, the County moved to dismiss the amended complaint making the

---

[3] Jones initially opposed Wong's motion to amend the complaint to include Calvin, demonstrating Calvin's interests had been protected from the outset of litigation. *Id.* at 150. Later, however, Jones and Calvin jointly filed a motion to dismiss that simply adopted Jones' earlier argument opposing the motion to amend. *Id.*

same arguments the Department made against the motion to amend and to dismiss the 2013 appeal.

**¶51**      Perhaps most telling, however, is that the County never filed any separate opposition to Sundevil's motions for summary judgment or a cross-motion for summary judgment in either the 2013 or 2014 appeals. In the 2013 appeal, the opposition to Sundevil's motion for summary judgment and the cross-motion for summary judgment were signed only by the attorney representing the Department. Once the motion to amend was granted and the County was added, the County never filed any response to the summary judgment motion or a cross-motion for summary judgment. Nor did it file a joinder in the State's opposition or motion. In the 2014 appeal, in which the County had been named in the complaint, only the attorney for the Department filed and signed the opposition to Sundevil's motion for summary judgment and the cross-motion for summary judgment and did so *expressly* on behalf of both the Department and the County.

**¶52**      Given this record, the County and Department's interests could not be more identical on both the motion to amend and the merits of the appeal. As the court in *Wong* stated, the defendants "apparently do not themselves consider their interests different. Identity of interests and virtually complete communication and mutual support could hardly be more strongly shown." 87 F.R.D. at 150.

### 3.    Conclusion

**¶53**      Accordingly, I conclude that if the *Krupski* analysis applies, the mistake here was sufficient for relation-back purposes and the County had sufficient notice of the 2013 appeal under the identity of interest test. Any other result, while required under *Tyman,* would result in a windfall for the County and not serve the purposes under Rule 15(c).



Ruth A. Willingham · Clerk of the Court
F I L E D : AA